### HENRY J. SCOTT v. O. W. CRAWFORD ET AL.

#### Delivered June 26, 1897.

**1. Receivership—Land Involved—Sale Under Deed of Trust.**

A sale of land by the trustee in a deed of trust, under a power contained therein, while all the property of the mortgagor is in the hands of a receiver, is void.

**2. Same—Same—Rights of Mortgagee.**

The court appointing a receiver for an insolvent corporation should permit a sale by the trustee of land covered by a deed of trust, where it is shown that it is not worth sufficient to pay the amount secured.

APPEAL from Tarrant. Tried below before Hon. IRBY DUNKLIN.

*Bomar & Bomar* and *Head, Dillard & Muse,* for appellant.

*S. B. Cantey, Wynne, McCart & Stedman,* and *W. N. Maben,* for appellees.

The Reporter has been unable to obtain copies of the briefs.

HUNTER, ASSOCIATE JUSTICE. — In this case one of the District Courts of Tarrant County, at the instance of appellees, who held a large majority of the capital stock of the Clark & Plumb Company, a Texas corporation, with a capital stock of $750,000, had placed all the property of the corporation in the hands of a receiver. Appellees alleged that the corporation was insolvent; that its assets consisted of 50,000 acres of land lying in Clay and Archer counties, Texas, and promissory notes amounting at their face value to $46,000, which were hypothecated and not under its control; that the lands were worth $8 per acre.

The averments of the petition were sufficient to give the court jurisdiction to appoint the receiver, and on January 25, 1896, the petition was filed, and William Capps was appointed receiver of all the property belonging to the corporation, and the lands were by proper order of the court placed in his possession on that day. These lands in November, 1890, belonged to Dorr Clark and D. C. Plumb, who were partners and held the same as tenants in common; and on the 26th day of said month they conveyed the same in trust to Albert R. Shattuck, trustee for Albert L. Richardson, to secure said Richardson in the payment of $185,000, as evidenced by four promissory notes executed by said Clark and Plumb,

payable to said Richardson, dated as above. These notes were all to mature on January 1, 1896, and bore interest at the rate of 12 per cent per annum after maturity until paid; and, for the payment of the interest thereon accruing before maturity of the principal notes, twenty interest coupon notes were given, under the same date, to become due on January 1, 1892, 1893, 1894, 1895, and 1896, respectively, conditioned that, if default be made in the payment of any of said interest coupons, then the holder and owner of said notes could declare the principal sum due and payable at once, without notice to the makers, and further providing that in that event, or upon maturity of the principal notes, the trustee, Shattuck, should have power, at the request of the owner or holder of said notes, or any one interested therein, to sell said property at the court-house door in Clay County, Texas, at public auction, to the highest bidder for cash, thirty days' previous notice of the time, place, and terms of such sale, and the property to be sold, having been first given in some daily or weekly newspaper published in Clay County, Texas, by at least four insertions, and also a notice thereof for twenty days prior to day of sale to be given in the counties of Archer and Clay in the manner provided for judicial sales by the laws of the State of Texas, the date of sale to be the first Tuesday of some month, and to apply the proceeds to the payment of said debt, and to make a deed or deeds to the purchaser or purchasers, and that the recitals therein should be prima facie evidence of the truth of the statements therein made; further providing that should the trustee at any time believe said property, or any part thereof, had become endangered as a security for the indebtedness, he should have the right to take possession of the same and hold it until said indebtedness should be paid, or until said property should be sold as aforesaid. But it was provided that nothing contained in the deed of trust should be construed as requiring the trustee to take or have actual possession of any of said property before being authorized to sell the same as therein provided. Substitution of trustee was provided for, to be made in writing; the substitute to have all the rights, title, and powers therein conferred on Shattuck. It was further provided that, when sale should be made by the trustee, the party in possession at the time should become the tenant at will of the purchaser, and that he should remove from the premises on ten days' notice, and pay reasonable rents to the purchaser. Afterwards, on December 15, 1891, Dorr Clark and D. C. Plumb conveyed all of said lands to the Clark and Plumb Company, the corporation above referred to.

These notes, while payable to Albert L. Richardson, in fact belonged to the British-American Mortgage Company; and after they were all matured, and default had been made in the payment thereof, as well as a large amount of the interest, W. W. Mangum was duly appointed substitute trustee, Shattuck failing or refusing to act. On the first Tuesday in April, 1896, the said Mangum, as trustee, after advertising the same as required by the deed of trust, and in all respects complying therewith, sold said lands as provided for in said deed of trust, when Henry James

Scott, the appellant herein, became the purchaser at the price and sum of $112,000, and the said trustee conveyed the same to him by deed duly executed and delivered on that day. On June 15, 1896, the said Scott intervened in this cause; and prayed that the court deliver the lands to him, or that, if his trustee's sale was held invalid, the court permit said trustee to again sell said lands.

Upon this petition of intervention the court appointed John W. Wray master in chancery in said cause, and the matters in controversy between the plaintiffs and intervener, Scott, were referred to him, to take evidence and report his conclusions of fact and of law to the court; and after full hearing the master reported, in substance, among others, the following facts:

On the day of the trustee's sale, April 7, 1896, Clark and Plumb were indebted to Henry James Scott in the sum of $40,000, and to secure this indebtedness a second mortgage had been given him on the land in question before they conveyed the same to the Clark & Plumb Company. This mortgage was second only to the mortgage or deed of trust held by the British-American Mortgage Company, Limited. On the same day— April 7, 1896—Clark & Plumb were indebted to the British-American Mortgage Company, Limited, in the sum of $155,206, the same being the balance due on the note executed to Albert L. Richardson, and said note was secured as aforesaid.

Intervener Scott, before the date of the sale — April 7, 1896 — had agreed to purchase said debt from the said British-American Company, and pay the full face value thereof. He had paid $25,000 in cash, and after the sale, and before his intervention herein, had paid the balance. The sale made by the trustee was fairly and legally made, and regularly and honestly conducted, and the amount due to Scott, $40,000, and that due to the British-American Company, $155,206, was honest and bona fide indebtedness, and was all due; and the dealings between Scott and the mortgage company were made in good faith with the sole purpose on the part of Scott to save the $40,000 due to him. The trustee had conveyed the lands to Scott, and he was entitled to the possession thereof. Clark and Plumb had conveyed the lands to the Clark & Plumb Company after mortgaging them to the said British-American Company and to said Scott, and the Clark & Plumb Company held them subject to these two mortgages. The cash market value of the lands on April 7, 1896, was $2 per acre.

This report was excepted to by the appellees mainly on the ground that Clark and Plumb were not indebted to the British-American Mortgage Company in as great an amount as found by the master, and that the said Scott and the British-American Company confederated together to defraud the Clark & Plumb Company, and to prevent said property from bringing its fair market value, and that the master had found the value of said property too small. The cause was heard, on exceptions to the master's report, by the court without a jury; and judgment was rendered that intervener take nothing, and denying him the right to have

the sale made by the trustee under the deed of trust. The court adopted the conclusions of fact as found by the master, and the case comes here on appeal by Scott, the intervener, upon these conclusions of fact. No statement of facts is contained in the record.

Appellant, in various forms and assignments of error, complains of the action of the court in refusing to deliver the possession of the lands to him, claiming (1) that the sale and deed made by the trustee were valid and passed the title to him, and that to hold otherwise would be to deny to the mortgagee his constitutional right to contract for the foreclosure of his mortgage outside of the courts, which is a valuable property right, and of which he can not be deprived without due process of law; and (2) that if the court should hold said sale of land by the trustee invalid, because made while the lands were in the hands of the receiver, then that an order be granted him to sell the same by his trustee as provided in his contract, as upon the facts found it is clear that the lands will not sell for enough to pay off his first and second mortgage debts, showing that the plaintiff stockholders and general creditors can never realize anything from said lands, or from the sale thereof by and under the order of the court.

We are inclined to think that the sale made by the trustee while the lands were in the possession of the receiver is void and can not be sustained. Ellis v. Water Co., 86 Texas, 109; Wiswall v. Sampson, 14 How., 52. True, in these cases the sale had been made under an execution issued by another court than the one in which the receivership was pending, and not under and by virtue of a deed of trust and power of sale, as in this instance; but the writer, at least, can see no good reason why the rule should not apply with equal, if not greater, force in the latter case.

In Wiswall v. Sampson, supra, the Supreme Court of the United States say: "The settled rule also appears to be, that where the subject matter of the suit in equity is real estate, and which is taken into the possession of the court pending the litigation, by the appointment of a receiver, or by sequestration, the title is bound from the filing of the bill; and any purchaser pendente lite, even if for a valuable consideration, comes in at his peril." Again the court say: "As we have already said, it is sufficient for the disposition of this case to hold that, while the estate is in the custody of the court, as a fund to abide the result of a suit pending, no sale of the property can take place, either on execution or otherwise, without the leave of the court for that purpose. And upon this ground we hold that the sale by the marshal on the two judgments was illegal and void, and passed no title to the purchaser."

If this invalidity results from the "title being bound" when the land is placed in the possession of a receiver, as is declared by this decision, then no sale of any character, whether under a deed of trust, power of attorney, process of court, or otherwise, can affect the title in the hands of the receiver, if made without consent of the court having custody thereof.

But we can not understand why the court below refused to allow intervener Scott's alternative prayer for permission to sell the lands by the

trustee named in the deed of trust, and under and according to its terms, in case it was held that the sale of April 7, 1896, made by him, was invalid. Scott had properly intervened in the cause, and set up his claims and liens under his mortgages, and they were found to be prior and superior to all other claims and liens upon or against the lands. The court, in its discretion, could discharge these lands from its custody, and direct the receiver to deliver the possession thereof to him, if it was made clear to the court that under no reasonable probability could they be sold by the court for more than the intervener's debts and liens against them; or it could order them sold by its receiver, and dispose of the proceeds of the sale in accordance with the rights and equities of the claimants and lien holders. But this discretion is one subject to review in this court.

In this case, as we understand it from the record, the issues raised by Scott's plea of intervention were referred to the master for examination upon the evidence, and for report. This examination was had by the master, and his conclusions of fact and of law were reported to the court, in which he found that an honest and bona fide indebtedness existed in favor of intervener, in the sum of $195,206, the greater portion of it bearing interest at the rate of 12 per cent per annum; that the cash market value of the lands was only $2 per acre, which would amount to $100,000. These conclusions of fact we understand the court below adopted as its conclusions of fact.

Now, the plaintiffs below, who caused these lands to be placed in the hands of a receiver, are only stockholders in the Clark & Plumb Company, and consequently can receive no benefits from those lands until all the debts of every character against their corporation, and liens on its property, have been paid or extinguished, and the other defendants and interveners are subsequent attachment lien holders. From these conclusions of fact, it is therefore manifest that no party to the suit can, under any reasonable probability, expect to receive any benefits from the sale of these lands after Scott's debts are paid; and in fact it is perfectly apparent from the conclusions adopted by the court that the lands are not worth enough to pay much more than half of his debts against them.

We therefore conclude that the court should have granted the alternative prayer of the intervener, and discharged these lands from its custody; the matter of costs and charges to be disposed of according to the rules laid down in Cattle Co. v. Bindle, 11 Texas Civ. App., 262.

We therefore reverse the judgment of the District Court, and remand the cause to be disposed of as above indicated.

*Reversed and remanded.*