### Brazelton & Johnson v. J. I. Campbell Company et al.

Decided February 12, 1908..

**1.—Appeal—Practice—Rendering Judgment—Excluded Evidence.**

A Court of Civil Appeals, for the purpose of rendering the judgment which the trial court should have rendered, cannot consider evidence which the trial court excluded, although the evidence was erroneously excluded. This rule applied as to a report by a Master in Chancery upon the claim of a creditor in a receivership case.

**2.—Evidence—Written Contract—Ambiguity—Parol Testimony.**

When an instrument in writing, or several instruments which should be construed together, are so ambiguous that the true intention of the parties cannot otherwise be ascertained, parol testimony should be received to aid in arriving at a proper construction.

**3.—Receivers—Tortious Act—Liability.**

While receivers might be held personally liable for their tortious acts in the management of an estate, they cannot be held liable officially and the estate in their possession be made to pay for their wrongful acts. So, where property of a third party has been converted by a receiver, the estate in the custody of the receiver should not be made to pay interest on the value of the property from the date of the conversion.

**4.—Receivers—Conversion by—Expenses.**

When property of a third party has been taken from his possession by a receiver and appropriated as property of the estate in his custody, upon restitution of the property to the owner he should not be charged with the expenses attending its conversion.

**5.—Receivership—Insolvent Estate—Interest Upon Claims..**

The granting of a receivership over the estate of an insolvent debtor suspends the running of interest upon the claims of unsecured creditors. The assets of the insolvent are held by the court for the benefit of all the creditors and for a just distribution according to their respective rights and claims. But in the case of a secured creditor and the foreclosure of his lien upon certain property, to the extent of the proceeds of the property when sold, the total amount of the claim, including interest, should be paid out of the proceeds.

Appeal from the District Court of Harris County.   Tried below before Hon. W. P. Hamblen.

*E. R. Campbell,* for appellants.—The transactions between appellants and the J. I. Campbell Company constituted a sale of the lumber to appellants.   Exhibit "A" referred to reads as follows, to wit:

"The State of Texas,
County of Harris.
"Know all men by these presents: That we, J. I. Campbell Company, incorporated, of Houston, Harris County, Texas, acting by its President, I. L. Campbell, of the county and State aforesaid, for and in consideration of the sum of Ten Thousand and no 100 dollars to us in hand paid by Brazelton & Johnson, of Waco, McLennan County, Texas, the receipt of which is hereby acknowledged, have bargained, sold and delivered, and by these presents do bargain, sell and deliver unto the said Brazelton & Johnson, of the county of McLennan, and State of Texas, all of the following described personal property in Tyler County, Texas, to wit: all that certain lot of yellow pine lumber stacked at our mill at Warren, Tyler County, Texas, which is shown in schedule attached, which lumber we agree to keep insured in the sum of Ten Thousand Dollars, or a sum sufficient to repay Brazelton & Johnson's interest in same.   Policies to be delivered to them and payable to them as their interest may appear.   Same to be marked in pile 'B. & J.'"

Exhibit "B" referred to reads as follows, to wit:

"State of Texas,
County of . . . . .
"This memorandum of contract made and entered into this, the 8th day of February, 1905, by and between the J. I. Campbell Company, incorporated, of Houston, Harris County, Texas, party of the first part, and Brazelton & Johnson, of McLennan County, Texas, party of the second part, witnesseth:
"That the said J. I. Campbell Company does contract and bind itself and does by these presents contract and bind as follows:
"Whereas, they have this day sold to the said Brazelton & Johnson a certain lot of lumber aggregating 1,253,021 feet of dry yellow pine lumber, now on their yards at their mill in Warren, Tyler County, Texas, schedule of which is hereby attached;
"That they will dress, load upon cars and ship the same to such point or points as they may from time to time be ordered by Brazelton & Johnson to ship said schedule of lumber so sold.
"They further agree and bind that whereas, they have at the mill of the Lake Charles Lumber Company at Lake Charles, Louisiana, a certain schedule of lumber made and attached hereto aggregating 1,720,270 feet yellow pine lumber, that the said Brazelton & Johnson may have the option to order from the said schedule at Lake Charles, La., and that they will exchange to them such lumber

ordered from Lake Charles for equal number of feet in the list at Warren, Texas. They further agree that the said Brazelton & Johnson may send to them orders from time to time for lumber not shown upon either of above schedules, and that if they, the said J. I. Campbell Co., can fill the said orders from other stocks that they will do so and will exchange said stock so shipped for equal amount of lumber from the stock at Warren, Texas, described above.

"They agree that the price upon which final settlement shall be made for the schedule of lumber at Warren, Texas, exhibited above, and this day sold to Brazelton & Johnson, shall be the net price received by Brazelton & Johnson from customers or their own yards, to which they will sell at wholesale less One Dollar ($1.00) per thousand feet, which shall be Brazelton & Johnson's marginal profit in this sale and purchase.

"The said Brazelton & Johnson hereby acknowledge the purchase of the schedule of lumber at Warren, Texas, and hereby agree to order out from said J. I. Campbell Company 1,253,821 feet of yellow pine lumber according to the terms and conditions above set out.

"They agree that they will sell the same at wholesale to their customers and their retail yards at reasonable market values reasonably in line with market conditions and that they will pay to the said J. I. Campbell Company the net price received after deductions of freight upon lumber sold delivered or the net price received F. O. B. when sold F. O. B., less a profit to themselves of One Dollar ($1.00) per thousand feet on all lumber sold.

"They agree that the settlement shall be made as follows: After shipments have been made by the said J. I. Campbell Company amounting to Ten Thousand Dollars ($10,000.00), the amount of the purchase price today paid them, they will on further shipments remit on the 6th day of each current month at prices named above, in cash, less (2%) two percent discount for all lumber shipped during previous month.

"(Signed in duplicate this day.)
"(Signed) J. I. Campbell Company,
"By I. L. Campbell, President.
"Brazelton & Johnson."

Attached to this contract is a detailed description of the lumber at Warren, Texas, described in Exhibit "A" above set out, and also a detailed description of the lumber on hand at Lake Charles, Louisiana, referred to above.

*E. P. & Otis K. Hamblen* and *Spotts & Matthews,* for appellee, receiver.—"It is essential that nothing remains to be done to put the subject matter in shape for future sale or identification, for if there is anything to be done material or important to identify the subject matter by the vendee, or before it becomes deliverable, then the sale is only executory, the subject matter not being *in esse* so that the property passes." Simpkins on Contracts and Sales, p. 320;

Cleveland v. Williams, 29 Texas, 210; Woods v. Half, 44 Texas, 635; Allen & Bro. v. Melton, 64 Texas, 218; Cooper v. Caleb, White & Wilson, sec. 499; Matador Land Co. v. White, 82 Texas, 477; Lunn & Fry v. Hale, 75 S. W., 360; Farrington v. Tennessee, 95 U. S., 693; Benjamin on Sales, sec. 310; 3 Pomeroy on Equity, sec. 1235.

The claims of creditors were presentable when the receivers were appointed; that date fixes their status and amount, regardless of when they were in fact presented by intervention, or otherwise, and no interest thereafter accruing can be allowed. Thomas v. Car Co., 149 U. S., 95; United States ex rel. White v. Knox, 111 U. S., 784; Grand Trunk Railway Co. v. Central Vermont Railway Co., 91 Fed. Rep., 569; People v. American Loan & Trust Co., 172 N. Y., 279; 65 N. E., 200; Alderson on Receivers, p. 847; Bowman v. Wilson, 12 Fed. Rep., 864; Soloman v. American Bldg. & Loan Ass'n, 116 Fed., 676; Jamison v. Estate, 163 Pa. St., 143; 29 Atl. Rep., 1001; People v. Commercial Alliance Life Insurance Co. (N. Y.), 47 N. E. Rep., 968.

The property of the defendant company having been, by order of court, taken from its possession and placed in the hands of a receiver, whereby it was prevented from using same in payment of its indebtedness, it is not liable for interest accruing during the time the property has been or may be in the hands of the receiver. Stephens v. Barringer, 13 Wend., 639; Osborne v. U. S. Bank, 9 Wheat., 738; Pillow v. Brown, 26 Ark., 248; Conn v. Penn, 1 Peters, 524; 16 Am. & Eng. Ency. of Law, 1068 and 1069.

FISHER, CHIEF JUSTICE.—I. L. Campbell and S. M. Campbell sued the J. I. Campbell Company, the Tyler Land & Lumber Company, and the Warren, Corsicana & Pacific Railway Co., in the District Court of Harris County, for the purpose of having receivers appointed for the named defendants. The plaintiffs in the petition filed in that proceeding represented that they were stockholders in the defendant corporations named, and were also creditors of the same, and that the corporations named as defendants were in imminent danger of insolvency. Upon the filing of this petition the District Court of Harris County appointed receivers of all of the defendant corporations sued.

During the pendency of the receivership the appellants, Brazelton & Johnson, filed a petition of intervention, in which it is alleged that the receivers had taken possession of certain lumber described in the petition, which the appellants had purchased from the J. I. Campbell Lumber Company prior to the filing of the petition seeking to place the assets of that company in the hands of a receiver. The aggregate amount of the lumber purchased was 1,253,821 feet, and the consideration paid was $10,000 in cash, the sale of which was evidenced by exhibit "A" attached to appellant's petition of intervention, which it is claimed constitutes an executed contract of sale. There is also attached to plaintiffs' petition an exhibit "B," which appears to be an instrument executed at or about the same time that the instrument classed as exhibit "A" was executed, and is to be taken and considered as a part of the same transaction.

The interveners in the petition seek to recover from the receivers the value of the lumber converted by them; and it is substantially alleged that the receivers had sold the lumber, or a part of the same, and the proceeds were now in their hands, which should be subjected to the demand of the interveners. They also plead in the alternative that in the event it should be held that they were not purchasers of the lumber, then that the instruments executed by the Campbell Company should be construed to be a mortgage on the lumber in question to secure the $10,000 paid. The instruments described the lumber.

Upon the trial of appellants' intervention the court below held that the instruments in question did not constitute a sale of the lumber by the Campbell Company to interveners, but that they constituted a mortgage on the lumber in question to secure the $10,000 paid by interveners, and a decree was rendered foreclosing a lien in favor of appellants on the fund in the hands of the receivers, which they received as the proceeds of the lumber sold by them. From this judgment the appellants as interveners have appealed, and the principal question raised in their brief is to the effect that the court erred in holding that they did not acquire title to the lumber in question as purchasers from the Campbell Company.

There is no statement of facts or findings of fact contained in the record, and all that can be ascertained with reference to what was before the trial court as evidence is set out in the judgment and decree rendered by that court. It is true that the record does contain a report of the Master in Chancery bearing on the claim of the interveners. That report finds that the appellants were the purchasers of the lumber in question, and the report states evidence tending to show that the purpose and intention was to convey title to them; but there is nothing indicating that this report was in evidence, and from a recital contained in the judgment it appears that a part, if not all, of this report was stricken out. Objections were filed in the trial court to the report of the master, and it is recited in the judgment that after having considered the objections, no additional evidence was offered, except as to the disposition of the property in controversy, it is the opinion of the court that certain exceptions urged to the report and the findings of the master should be sustained as hereinafter stated. Then follows this recital: "Wherefore it is considered and so decreed by the court that the transactions and dealings between interveners herein and the J. I. Campbell Company, as evidenced by the written contracts in evidence, did not constitute an absolute sale by the said J. I. Campbell Company to the said interveners of the lumber described in interveners' intervention, and in said written instruments thereto attached, but the same constituted and was intended as a mortgage," etc. From this we take it that the court determined the legal effect of these instruments from the face of the documents themselves, without a resort to the report of the master. The theory of the court evidently was that there was no ambiguity upon the face of these two instruments, which are attached to the plea of intervention, and which are known as exhibits "A" and "B,"

and therefore the evidence heard by the master, which is stated in his report, was not to be considered in determining the legal effect of the transaction. As before said, the finding of the master was that the effect of the two instruments was to create a sale; and especially was this true when taken in connection with parol evidence introduced before him and considered by him in determining what was the intention of the parties in executing the instruments. The master held that the instruments upon their face showed an intention to convey, but if he was mistaken in that, and that the instruments were ambiguous, then he held that the evidence introduced removed the ambiguity and demonstrated the fact that a sale was intended. But, as before said, we can not look to this report in determining this appeal, because, as we take it, it was eliminated by the judgment of the trial court.

In Eidson v. Reeder, 101 Texas, 202, the Supreme Court held that although the Appellate Court might properly hold that evidence excluded by the trial court was admissible, it could not be considered by the Court of Civil Appeals in determining the character of judgment that should be rendered by that court. In the case cited this court held that in the trial of the case below before the judge without a jury that a certain deed which was excluded by the trial court should have been admitted in evidence and considered; and there being no dispute as to the other facts, we then held that if the excluded deed was considered, then the proper judgment to be rendered was to reverse and render. But, as said before, the ruling of the Supreme Court was that we could not consider evidence that was not before the trial court. This much is said in view of the fact that while we have reached the conclusion that there is an ambiguity in the instruments involved in this controversy, and the master's report from the evidence received by him, placed the proper construction upon them, we can not consider that report in determining what disposition we will make of this case, but we have to determine it alone upon the evidence which was before the trial judge; and as we construe the decree bearing upon that subject, all that he considered was the two instruments declared on and described by the appellants in their plea of intervention.

The first instrument, known as exhibit "A," is clearly a bill of sale, and shows upon its face that the purpose was to convey title to the lumber in question to the appellants. The greater part of the recitals of the instrument known as exhibit "B" evidence a like intention; or, in other words, there is nothing down to the expression, "they agree that the price upon which final settlement should be made," and what thereafter follows, to indicate a conflict with exhibit "A," or a purpose different from that stated in that instrument. Commencing with the words "they agree that the price upon which final settlement shall be made," etc., and the recitals thereafter stated, there is introduced an uncertainty and ambiguity, which can only be removed by the aid of parol evidence showing an intention of the parties consistent with what is stated upon the face of the two documents in question. These ambiguous recitals can not be said to point to the conclusion that the intention was to create

a mortgage, because, taken by themselves, we are not able to understand their meaning. The parties to the instrument evidently intended that they should serve some purpose; and, as before said, what it was can only be ascertained from the evidence of the parties to the contract. Taking the two instruments together, and construing them as constituting one contract, the predominating recitals indicate a purpose and intention to convey title, and if this is not the construction to be placed upon them, then all that can be said is that by reason of the latter part of the recitals contained in exhibit "B," an uncertainty and ambiguity is produced. The decree in effect states that the trial judge heard no evidence and based his conclusion upon the recitals contained in these instruments. In this we think he erred; not by reason of the fact that the instruments considered together necessarily constitute a sale, but we merely hold that the most certain and definite expressions that appear upon the face of the instruments indicate that the intention was to create a sale; and we are inclined to the opinion that if a correct construction could be reached solely by reference to the instruments alone, without the aid of extrinsic evidence, the conclusion would be, not that they created a mortgage, but a completed sale. But the element of ambiguity that arises by reason of the recitals contained in the latter part of exhibit "B" require, it seems to us, the introduction of evidence, if obtainable, to explain the nature and effect of the transaction.

It is next contended by the appellants that if we should treat the transaction as a sale, then they would be entitled to interest on the value of the lumber converted, if not from that time, from the time that they filed their plea of intervention. As we construe the pleadings of the interveners, with their prayer for relief, we are not prepared to say that this question should be decided. We are not authorized to go beyond what we understand to be the liability asserted against the appellees or the receivers in the plea of intervention. As we construe that pleading, the purpose and object is merely to hold the receivers liable in their official capacity. It is pleaded that they took possession of the property as receivers, and they disposed of it and sold it as receivers, some of it without express order of the court, and the great bulk of it by virtue of an order of the court. Some of the lumber was sold by the Campbell Company prior to the appointment of the receiver, but the proceeds of that sale was collected by the receiver, that is, so far as appears from the pleadings and the master's report, which we are not considering as evidence. In other words, it appears that all of the lumber involved in this controversy has been sold and converted into cash, the proceeds being now in the possession of the receiver. As against those proceeds, if we should hold that the transaction constitutes a sale, the interveners would be entitled to proceed; and it would be proper for the trial court to render a judgment decreeing to them all of the proceeds received and collected by the receiver that arose from the sale of the lumber which the appellants had purchased from the J. I. Campbell Company. But it does not follow that the appellants would be entitled to interest against the receivers on the

value of the lumber that had been converted and sold.  The act of conversion was the individual act of the receivers, for which the estate of Campbell could not be held responsible, and for the tort of the receivers the funds of that estate could not be held liable.

If the receivers took possession of property belonging to the appellants, a third party, and which was in no wise a part of the assets of the Campbell estate, their conduct in so doing could not be characterized as official, but they stand in the attitude of trespassers, so far as the appellants are concerned.  The appellants could have framed their pleadings so as to recover against those that committed the tort individually; but, as said before, their petition docs not bear such a construction, and for the individual wrong of the receivers in depriving appellants of their property, of course it could not be contended that the Campbell estate would be responsible.

This view, compared with what we have just said with reference to the liability of the receivers for the proceeds of the property sold, may appear inconsistent; but, when analyzed, such is not the case, for the trial court, which has possession through its receivers of the proceeds of the sale of property belonging to another who is not a party to the receivership, has the power and it becomes its duty, when the question of title is settled in favor of such party, to require the receiver to turn over and deliver to him the funds or property in his hands.

It seems from the judgment of the trial court that the expenses of the sale of the lumber in question and the cost attending that transaction, which amounted to something over the sum of $600, was allowed as a part of the expenses of the receivership.  If it should be determined that the appellants are the owners of the lumber in question, and that it was wrongfully taken from their possession and sold by the receivers, then it is clear that they should not be charged with any costs or expenses of the receivership in connection with that transaction.  This much is said in view of an assignment of error complaining of the action of the court in charging the appellants with the expense of the sale of the lumber and the cost of the receiver in connection therewith.

It is also contended by the appellants that if the instrument should be construed as a mortgage, then they would be entitled to interest on the mortgage debt secured, from the date of its maturity.  The trial court construed the instrument as a mortgage and decreed a foreclosure for the sum of $10,000, the amount paid Campbell & Company by appellants, but declined to give a judgment for any amount as interest.  It is a difficult matter to say that the record presents this question in a way that calls for a decision by this court.  We can not tell from any fact found or stated in the record when the amount matured or was to be paid, if it could be held to be a mortgage.  Of course, the contracts in this case did not provide for any interest, and if interest is allowed it is by virtue of the statute that provides that interest shall commence to run from the date the amount is due.  But, assuming that if held to be a mortgage, the same would be entitled to draw interest, then we are inclined

to the view that if the estate is insolvent, the receivership over the property in question would suspend the running of interest. The receivership places the debtor in the position of being unable to pay the debt when it matures. All of the property or assets of his estate which could be used for that purpose is taken from his possession and goes into the custody of the court. The proceedings in this case upon their face show that the receivership was at the instance of stockholders and creditors of the corporation; and it is a rule of law that the assets of the corporation are to be held by the receiver, or the court through its receiver, for the benefit of all the creditors and for a just distribution according to their respective rights and claims. Of course, if the estate is solvent, then the creditors who have claims would be entitled to interest upon their demands.

This much is said only so far as to indicate the views of this court when it is sought to obtain a judgment against the general assets of the estate, or a judgment against the receivers, to be paid out of the general assets of the estate. But in this particular case, so far as the proceeds of the lumber is concerned, we are inclined to the view that it would be liable, not only for the principal debt, but for the interest that accrued on the debt from the time of its maturity. The mortgage, if it is a mortgage, was executed not only to secure the principal, but the interest that runs with the principal and which is an incident of the principal sum due. In a foreclosure proceeding the creditor is entitled to foreclose on the property for all that is then at that time due, whether principal, or interest or both. If the plaintiffs' debt was intended to be secured by the lumber, all the proceeds that arose from the sale by the receiver would be responsible, and the lien would attach, not only for the principal debt, but also for the interest.

For the reasons stated the judgment is reversed and the cause remanded.

*Reversed and remanded.*