**TEXAS CO. et al. v. KENT.**

No. 1364.

Court of Civil Appeals of Texas. Waco.

May 11, 1933.

Rehearing Denied June 8, 1933.

Davis, Jester & George, of Corsicana, and F. T. Baldwin and Knox W. Gilmore, both of Houston, for appellants.

J. S. Callicutt and Lawrence Treadwell, both of Corsicana, for appellee.

GALLAGHER, Chief Justice.

Appellee, G. C. Kent, and one C. A. Middleton were, on and prior to January 14, 1929, owners of certain oil refineries, oil leases, and personal property used in connection therewith, and were operating the same as copartners under the name of Kent-Middleton Refining Company. On the date aforesaid Kent sold and conveyed his undivided one-half interest in all said properties to Middleton, in consideration of a recited cash payment of $50,000 and a note in the sum of $345,000, payable in monthly installments of $25,000 each, beginning April 1, 1929. The vendor's lien was retained in the deed to secure said note. A part of the properties conveyed was situated in Navarro county and another part in Milam county. Middleton, to further secure said note, executed and delivered to Kent two deeds of trust, one of which was upon the entire properties situated in Navarro county and the other upon the entire properties situated in Milam county. Among the Milam county properties so mortgaged were oil leases, from all of which oil was being taken at the time. Middleton, shortly after the purchase of the interest of Kent in said properties, organized a corporation called Central Texas Refining Company, and conveyed said entire properties to it. The corporation assumed the indebtedness owed by Middleton to Kent. On April 18, 1930, in a suit instituted by Middleton, R. L. Wheelock was appointed receiver of said corporation and all its properties were placed in his hands, and he thereafter operated the same under orders of the court. The proceedings which resulted in his appointment are not before us. Shortly after his appointment it was discovered that said corporation was hopelessly insolvent, and all its creditors were thereupon asked to intervene and establish their respective claims, to the end that its holdings might be liquidated and the proceeds thereof distributed among them according to their respective rights. All, or practically all, of its creditors did so intervene. On September 6, 1930, appellee, Kent, filed his petition in intervention, in which he

asserted a balance due him on said note of $250,000, with interest and attorney's fees thereon as stipulated. He also asserted, under the two deeds of trust aforesaid, liens on all the property covered thereby which had passed into the hands of the receiver. The receiver, in operating said properties, took from wells situated on the mortgaged oil leases in Milam county crude oil of the net value after deducting cost of production of $14,272.69. He also sold certain properties covered by Kent's mortgages, for which he received the sum of $14,500.

The several parties to said cause, on February 2, 1931, in open court, agreed to a judgment disposing of all Kent's claims in the premises. The substance of said judgment was dictated to the court stenographer, and it was agreed that a proper draft thereof should be prepared by counsel for entry on the minutes of the court. The terms of said agreed judgment, as far as relevant here, were that the properties covered by Kent's mortgages then in the hands of the receiver should be immediately conveyed by the receiver to him and a credit of $125,000 on his indebtedness allowed therefor; that the receiver should pay to Kent as a further credit on such indebtedness the proceeds of all property covered by his liens which had been sold by him as aforesaid, and that Kent should have proper judgment for the remainder of his debt as an unsecured creditor of the corporation. The net value of the crude oil taken by the receiver from the mortgaged leases was not known at that time, but there is testimony that the same was to be obtained from the receiver's auditor and accountant and incorporated in the judgment as drafted. Such net value having been furnished by the auditor in the amount as aforesaid, a draft of the agreed judgment was prepared and submitted to counsel for the several parties for consideration. Some question was raised by counsel for one or more of the unsecured creditors as to whether the net value of the crude oil taken by the receiver from the mortgaged leases should be paid to Kent as a secured creditor, or distributed as a general asset of the corporation among the unsecured creditors. The judgment prepared was thereupon modified so as to recite, in substance, that the court found that the receiver had sold crude petroleum on which Kent had a lien, and that the amount received therefor after deducting the cost of production was said sum of $14,272.69, which sum the receiver was ordered to pay to said Kent. The judgment as so modified was duly approved and entered on the minutes of the court.

The Texas Company, Humble Oil & Refining Company, Cranfill-Reynolds Company, and Cranfill-Reynolds Pipe Line Company, all unsecured creditors of the Central Texas Refining Company, afterward filed a motion to correct and reform said judgment. The right to present such motion and to have the same considered and the issues therein raised adjudicated by the court is not questioned. The parties presenting said motion recognized the validity of said judgment and asked that the same be confirmed except in so far as it recited that Kent had a lien on the crude petroleum taken by the receiver from the wells in Milam county covered by Kent's mortgage, and that the net proceeds of the same be paid to him on his secured debt. They asked that that part of the judgment be set aside and eliminated, and that the net sum realized from the crude petroleum so taken be declared to belong to all the creditors and distributed accordingly. They alleged as grounds for such relief that such provision was not within the terms of the agreement upon which said judgment was based, and that, as a matter of law and fact, Kent did not have nor was he entitled to a lien on the crude petroleum taken by the receiver from wells on the mortgaged premises. We do not find in the transcript any reply by Kent to said motion.

The motion aforesaid was presented to the court, testimony on the issues involved therein introduced, and a general order overruling the same entered. No specific findings of fact or conclusions of law were filed. The Texas Company and Humble Oil & Refining Company have appealed from the order overruling said motion.

### Opinion.

■ Appellants present a number of assignments of error. The specific contention made therein is that, when the receiver took the crude oil from the wells on the mortgaged leases, it became at once personal property and was immediately discharged from appellee's lien which existed thereon while it remained in place in the leased properties, and that appellee no longer had any right, either legal or equitable, therein or thereto. The rule invoked by appellants applies when the mortgagor is permitted to remain in possession and continues to operate the property in the manner contemplated by the parties at the time the mortgage was given by the mortgagor and accepted by the mortgagee. The mortgage in this case was given to secure the purchase price of a half interest in the leases from which the oil in question was produced, together with such an interest in other valuable properties. The continued operation of the wells by the mortgagor and the consequent depletion of their value as security were evidently contemplated by the parties. As an effectual offset to such depletion, however, the payment monthly by the mortgagor of a substantial installment on the secured debt was expressly stipulated. While payments were not made as stipulated, the sum of $95,000 was paid on the secured debt by the mortgagor, or the corporation to whom he conveyed the properties and which

assumed the indebtedness secured by appellee's mortgages thereon. On April 18, 1930, the court appointed a receiver for the corporation and placed its entire properties in his hands. While such appointment was not made at appellee's instance nor for the purpose of preserving and enforcing his rights, it was in no way antagonistic thereto. Appellants had no part in procuring such appointment. The insolvency of the corporation was soon thereafter discovered, and, apparently by common consent of every one interested, the court proceeded to liquidate the assets of the corporation in the hands of the receiver and to distribute the proceeds. Appellee, within a reasonable time after the appointment of the receiver, intervened in the cause, asserted his rights, and participated in the subsequent proceedings.

◼ The appointment of the receiver herein terminated the possession of the corporation as between it and appellee. The receiver, on taking possession of the properties, was not the mere successor of the corporation. He was the representative of the court, holding and operating such properties for the preservation thereof and for the benefit of such parties as might ultimately establish an interest therein. Clark on Receivers (2d Ed.) pp. 40 et seq. §§ 42 and 43; Barber Asphalt Co. v. Forty-Second St., M. & St. N. Ave. R. Co. (C. C.) 175 F. 154, 155; Butterworth v. Degnon Contracting Co. (C. C. A.) 214 F. 772, 773; Johnston v. Lasker Real Estate Ass'n, 2 Tex. Civ. App. 494, 21 S. W. 961, par. 4. A careful consideration of the authorities cited by appellants discloses that none of them sustain their contention that a receiver succeeds to the right possessed by a mortgagor, in unchallenged possession of quarries, mines, or oil wells, to operate the same in the manner contemplated at the time the mortgage was given, and to hold the products of such operation as personal property, discharged from the lien. We do not think that appellee forfeited his right to claim compensation for the net value of the oil produced by the receiver because he did not seek to have the mortgaged leases discharged from the custody of the receiver and proceed to sell the same under the power contained in his mortgage, notwithstanding such course was held proper in the case of Scott v. Crawford, 16 Tex. Civ. App. 477, 41 S. W. 697, par. 2, cited by appellant, under the circumstances therein involved. The producing wells involved herein were only a small part of the properties mortgaged, and any attempt to have them discharged from the custody of the receiver and sold under such power would have resulted in more or less confusion. The court being, through its receiver, in possession of the entire properties of the insolvent corporation, and having before it all the interested parties, could promptly determine and effectively enforce the rights of each of them, and thereby avoid the unnecessary expense and delay incident to other and further actions.

◼ There is no contention in this case that appellants, or any other unsecured creditor, had any right, legal or equitable, to the proceeds of the oil produced from the mortgaged wells until the same was in some effective way discharged from appellee's lien. Since the receiver did not succeed to the right of the mortgagor to produce the oil and hold the same, freed from the lien which existed thereon while it remained in place, it follows as a necessary consequence that the oil produced by him remained charged in his hands with such lien, and that his action, as concerned appellee, amounted to a depletion of his security and a conversion of such oil. Appellee's pleadings were sufficient to invoke a recovery on either of such theories. The trial court had, under his general equitable powers, full discretion and authority to protect appellee from loss from the action of the receiver in operating said leases and taking and appropriating such oil, as the essential principles of right and justice demanded. He heard the evidence, and, in the exercise of such discretion and authority, found the amount of injury resulting to appellee from the depletion of his security by the receiver, and ordered that he be compensated therefor out of the funds, which were augmented to the extent of the net value of the oil so taken. We have found no case directly in point on the issues here involved, but our holding is supported in principle by the authorities cited above, and the following authorities cited by appellee: Jones on Mortgages (8th Ed.) §§ 828, 847, 851, 854, 859, 875, 893, 1930, 2176, 2489; Tardy's Smith on Receivers (2d Ed.) pp. 577, 588, 616, and 1511; 41 C. J. pp. 627, 628; 42 C. J. pp. 128, 131, 132, 312, 320, and 321; 53 C. J. pp. 128, 251; 19 R. C. L. pp. 326, 340; 26 R. C. L. p. 1107; Clark on Receivers (2d Ed.) p. 1384, § 959; Hutchins v. King, 1 Wall. 53, 17 L. Ed. 544, 546; Allison v. Cold Creek & N. R. Coal Co., 87 Tenn. 60, 9 S. W. 226, par. 3; Whitt v. Kentucky Oil Producing Co., Inc., 223 Ky. 348, 3 S.W.(2d) 786, par. 7; Verner v. Betz, 46 N. J. Eq. 256, 19 A. 206, 7 L. R. A. 630, 633, 19 Am. St. Rep. 387; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Brazelton & Johnson v. J. I. Campbell Co., 49 Tex. Civ. App. 218, 108 S. W. 770.

The judgment of the trial court is affirmed.