BLAKELY AIRPORT JOINT VENTURE II, Raleigh Blakely & Associates, Inc. and Raleigh Blakely, Sr., Raleigh Blakely, Jr., Bruce Blakely, and Rex Blakely, Plaintiffs,

v.

The FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, As Receiver for Vernon Savings & Loan Association, Sandia Federal Savings and Loan Association, Charles Wilson, and Don R. Dixon, Defendants.

Civ. A. No. CA3-87-2912-D.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 29, 1988.

H. Dee Johnson of Matthews, Kroemer, Johnson & Turner, Dallas, Tex., for plaintiffs.

J. Michael Amis and David A. Ives of Leonard, Marsh, Hurt & Terry, Dallas, Tex., Paul H. Friedman and Samuel J. Winer of Arter & Hadden, Washington, D.C., Barry S. Zisman and David I. Hammond of Arter Hadden & Witts, Dallas, Tex., and Jordan Luke, Jack Smith, Dorothy Nichols, and Charles McDonald of Office of Gen. Counsel, Washington, D.C., for Federal Sav. and Loan Ins. Corp., as Receiver for Vernon Sav. and Loan Ass'n, FSA.

## MEMORANDUM OPINION AND ORDER

FITZWATER, District Judge.

Defendant, Federal Savings and Loan Insurance Corporation ("FSLIC"), as receiver for Vernon Savings and Loan Association, FSA ("New Vernon"), seeks leave of court in this removed action to conduct a foreclosure sale of property that is the subject of this action. Plaintiffs oppose the granting of leave and move to remand this case to Texas state court. For the reasons that follow, the court denies the motion to remand and grants leave to conduct the foreclosure sale.

# I.

## BACKGROUND

This action was filed in Texas state court on February 18, 1987. Plaintiffs sued state-chartered Vernon Savings and Loan Association ("Old Vernon"), among others, essentially alleging that Old Vernon had promised but failed to supply a purchaser for a certain real estate project that had been developed by plaintiffs and financed by Old Vernon. By way of counterclaim, Old Vernon sought to collect its loan to plaintiffs.[1] The Federal Home Loan Bank Board ("FHLBB"), on March 20, 1987, appointed the FSLIC as receiver for Old Vernon and, with certain exceptions, transferred the assets and liabilities of Old Vernon to New Vernon, a federally chartered institution. Thereafter, the Texas state court, by agreement of the parties, appointed a separate receiver over the property that is the subject of this suit. The state court ordered New Vernon to be substituted for Old Vernon on July 14, 1987. On November 19, 1987, the FHLBB appointed the FSLIC as sole receiver for New Vernon. On December 8, 1987, the FSLIC removed this action to this court.

# II.

## DISCUSSION

### A.

██ The court begins by determining whether this case should be remanded to state court. In their motion to remand, plaintiffs assert that the FSLIC's petition for removal was not filed within 30 days of the date when the FSLIC could have removed the case and removal was therefore untimely. *See* 28 U.S.C. § 1446(b); 12 U.S.C. § 1730(k)(1); *Vernon Savings and Loan Association, FSA v. Commerce Savings and Loan Association,* 677 F.Supp. 495, 499 n. 13 (N.D.Tex.1988) (removal by FSLIC to be conducted in accordance with normal removal procedures). Relying upon the Fifth Circuit's decision in *North Mississippi Savings and Loan Association v. Hudspeth,* 756 F.2d 1096 (5th Cir.1985), cert. denied, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986), plaintiffs contend that the FSLIC, as the real party in interest through New Vernon, had authority to remove this case no later than July 14, 1987, when New Vernon was formally substituted into the state case. Plaintiffs read *Hudspeth* to say that "even though the FSLIC was not a named party to the [Hudspeth] suit, it ... did have the power and authority to remove the case" and that "the FSLIC's authority to remove to federal court arose when New North Mississippi Savings & Loan Association, the successor to the failed association, was made a party to the suit." (Ps. Br. at 3). The court disagrees.

Although the FSLIC did have authority to remove in *Hudspeth,* although not a named party, the FSLIC's power to remove arose from its status as receiver for the old, state-chartered institution in that case, which institution remained a party at the time of removal.[2] *See Hudspeth,* 756 F.2d at 1100. Timeliness of removal was not at issue in *Hudspeth.* In the present case, the FSLIC removed pursuant to its status as receiver for New Vernon. Regardless whether the FSLIC *may* have had some right to removal with regard to its receivership of Old Vernon, on November 19, 1987 the FSLIC became receiver of New Vernon, an entity separate and distinct from Old Vernon. The FSLIC thereby became entitled to remove claims involving New Vernon, notwithstanding any rights it may have had but chose not to exercise with respect to Old Vernon. The FSLIC timely effected removal within 30 days of its appointment as receiver for New Vernon. Accordingly, plaintiffs' motion to remand is denied.

---

1. Old Vernon apparently made the loan to plaintiff, Raleigh Blakely & Associates, Inc., while other plaintiffs guaranteed the loan.

2. *Hudspeth* involved an action for a declaratory judgment on a compensation agreement. The action was instituted by the state-chartered institution and continued by the FSLIC as receiver for the state-chartered institution. The "New North" institution was joined in the litigation through a counterclaim against it by the defendant to the declaratory judgment action.

### III.

Having determined the remand issue, the court next turns to the FSLIC's request for leave to conduct a foreclosure sale of the property involved in this case.

█ The court agrees with the FSLIC that the sale of property held *in custodia legis* by a court-appointed receiver requires authorization by the court in which the receivership is pending. *First Southern Properties, Inc. v. Vallone*, 533 S.W.2d 339, 341 (Tex.1976); *see* 28 U.S.C. § 959 (receiver in case pending in federal court shall manage and operate property according to state law). The FSLIC, relying upon *Scott v. Crawford*, 16 Tex.Civ.App. 477, 41 S.W. 697 (1897, writ ref'd), further contends, however, that court approval is mandatory upon a showing that the indebtedness against the property is greater than the fair market value of the property. The *Scott* case, however, did not involve, as does this case, claims by the debtor against the lienholder that could offset all or part of the debt. The court concludes, therefore, that it is not inexorably bound to authorize a sale of the property even though the FSLIC has demonstrated by affidavits and exhibits[3] that the debt exceeds the fair market value of the property.

█ Because court authorization is not automatic, the court next decides whether a sale is appropriate at this time. The court notes that the value of the property has declined considerably over the last year (*see* Appraisal appended to Hirschy Supp. Aff. filed Jan. 25, 1988) and that the property is operating only in a break-even manner, if not at a loss (*see* Oster Aff. filed Jan. 25, 1988). Furthermore, plaintiffs do not appear to seek to retain an interest in the property that may be alienated by foreclosure.[4] The relief requested in plaintiffs' first amended complaint is for a declaratory judgment that plaintiffs owe nothing under the loan or that plaintiffs obtain relief sufficient to pay off the loan and leave plaintiffs a profit. The court concludes that it would be in the best interests of all the parties in this action to allow a sale at this time to prevent further loss in value of the subject property.

Normally, when a court-appointed receiver is involved, the receiver, as agent for the court, should conduct the sale. Nevertheless, the FSLIC requests that the court discharge the property from the receiver's custody, in order that a substitute trustee can conduct the sale and that the receiver can thereafter render an accounting. The FSLIC appears to request a hybrid judicial-non-judicial foreclosure. *Cf. Baumgarten v. Frost*, 143 Tex. 533, 186 S.W.2d 982, 986 (1945) (receiver's sale is judicial sale). The court in its discretion will allow such a sale.[5] *See Scott*, 41 S.W. at 699. Notwithstanding this method of sale, the court reminds the parties that for the sale to be final and valid, this court must confirm the terms of the sale. *See Baumgarten*, 186

---

3. The motion for leave to conduct foreclosure sale is before the court on affidavits and exhibits. *See* Fed.R.Civ.P. 43(e). Plaintiffs, in their opposition to the motion for leave, request an evidentiary hearing on the motion. The court concludes that no such hearing is required. *See by analogy Federal Savings & Loan Insurance Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir.1987) (approving Rule 43(e) procedure for determining preliminary injunction application). Moreover, the court has afforded the parties the opportunity to supplement the record, and the parties have done so. The request for an evidentiary hearing, therefore, is denied.

4. Plaintiffs have raised no real objection to allowing a foreclosure sale other than that foreclosure would violate an alleged interim settlement agreement in which plaintiffs purportedly abandoned an application for an injunction against foreclosure in return for having the property placed in the hands of a receiver. (Plaintiffs also objected to certain evidence offered in the FSLIC's motion for leave to conduct foreclosure sale. Those objections have been remedied by additions to the record made by the FSLIC.) The FSLIC counters that the right to foreclose was never waived. The court has reviewed the transcript of the state court hearing concerning the appointment of a receiver. Nothing in the hearing indicates that Old Vernon agreed to waive its right to foreclose.

5. The court notes that the state court, by an agreed order dated July 14, 1987, allowed a substitute trustee to post the property for foreclosure pursuant to the terms of the deed of trust.

S.W.2d at 986. The FSLIC's motion for leave to conduct foreclosure is granted.

## IV.

IT IS ORDERED that:

1. the subject real property, legally described in Exhibit A hereto, is discharged from the custody of the receiver to a duly-appointed substitute trustee under the deed of trust at the time of any substitute trustee sale (to be held in accordance with the terms of the subject deed of trust) at any time on or after February 2, 1988;

2. the FSLIC is permitted to proceed with its remedies to foreclose any personal property subject to the deed of trust;

3. further, that in the event of any failure by the substitute trustee to sell or convey the real property, such property shall be deemed without further act or order of this court to be returned to the custody of the receiver and be governed by the terms of the now-outstanding order granting the receivership, unless and until the substitute trustee conducts a subsequent sale or until further order of this court; and

4. upon notice by the substitute trustee that a sale has been conducted, the receiver shall render an accounting to the parties and to the court, which shall include an accounting of its compensation and all matters relative to its performance of the receivership and a proposal for disposition of any personalty in its possession.

SO ORDERED.

### EXHIBIT A

Being a 2.3420 acre tract of land situated in the William Lomax Survey, Abstract No. 792, Dallas County, Texas, said tract lying south of the right-of-way line of Westgrove Road as now located on the ground, said 2.3420 acre tract being more particularly described as follows:

BEGINNING at a ½ inch iron rod set for corner, said point being South 89 degrees 45 minutes 40 seconds West a distance of 400.82 feet from a ½ inch iron pipe found in the West right-of-way line of Addison Road at the Northeast corner of Texas Federal Subdivision No. Two, an addition to the City of Addison, Texas as recorded in Vol. 79147, Page 1915, Deed Records, Dallas County, Texas;

THENCE South 89 degrees 54 minutes 46 seconds West, a distance of 69.18 feet to a ½ inch iron rod set for corner;

THENCE South 00 degrees 14 minutes 20 seconds East, a distance of 142.62 feet to a ½ inch rod set for corner;

THENCE North 46 degrees 35 minutes 21 seconds West, a distance of 207.20 feet to a ½ inch iron rod set at an angle point;

THENCE South 89 degrees 54 minutes 46 seconds West, a distance of 89.70 feet to a ½ inch iron rod set for corner, said point being in a curve to the left, the center of which bears North 68 degrees 52 minutes 44 seconds West a distance of 130.00 feet;

THENCE in a northerly direction with said curve to the left through a central angle of 21 degrees 12 minutes 46 seconds, an arc distance of 48.13 feet to a ½ inch iron rod set at the end of said curve;

THENCE North 00 degrees 05 minutes 14 seconds West a distance of 257.01 feet to a ½ inch iron rod set for corner in the South right-of-way line of Westgrove Road as now located on the ground;

THENCE North 89 degrees 56 minutes 40 seconds East, with said line of Westgrove Road, a distance of 300.00 feet to a ½ inch iron rod set for corner;

THENCE South 00 degrees 05 minutes 14 seconds East a distance of 303.89 feet to the Place of Beginning; CONTAINING 102,018 square feet or 2.3420 acres of land.

Being a 2.7876 acre tract of land situated in the William Lomax Survey, Abstract No. 792, Dallas County, Texas, said tract lying between the South right-of-way line of Westgrove Road as now located on the ground and the North line of Texas Federal Subdivision No. Two, an addition to the City of Addison as recorded in Vol. 79147, Page 1915, Deed Records, Dallas County, Texas, said 2.7876 acre tract being more particularly described as follows:

BEGINNING at a ½ inch iron pipe found in the West right-of-way line of Addison Road (60 feet wide), said point being the Northeast corner of said subdivision;

THENCE South 89 degrees 45 minutes 40 seconds West, with the North line of said subdivision and the extension thereof, at 200.00 feet past a "T" cut in concrete found at the Northwest corner of said subdivision and the Northeast corner of a certain 0.3370 acre tract of land, at 275.00 feet passing the Northwest corner of said 0.3370 acre tract of land and the Northeast corner of a certain 0.2855 acre tract of land, at 350.00 feet passing a ½ inch iron rod found at the Northwest corner of said 0.2855 acre tract of land, in all, a distance of 400.82 feet to a ½ inch iron rod set for corner;

THENCE North 00 degrees 05 minutes 14 seconds West, a distance of 303.89 feet to a ½ inch iron rod set for corner in the South right-of-way line of Westgrove Road conforming to the 60 foot right-of-way width as established by the City of Addison for wide concrete pavement now being placed therein;

THENCE North 89 degrees 56 minutes 40 seconds East, with said line of Westgrove Road, a distance of 400.02 feet to a Hilti Nail set for corner in said West right-of-way line of Addison Road;

THENCE South 00 degrees 14 minutes 20 seconds East, with said line of Addison Road, a distance of 302.61 feet to the place of beginning, CONTAINING 121,426 square feet or 2.7876 acres of land.