# Z. O. Jackson, Administrator,

## v.

## Amelia S. K. May.

*Mortgages—Foreclosure—Usury—Application of Payments—Principal and Surety—Priority of Equities in Mortgaged Property—Subrogation.*

1. Where one of two loans is usurious, the other is not affected merely because they were made at about the same time and secured by the same mortgage. If the loans are in fact separate and independent, they will be so treated in regard to usury.

2. Where a charge for expense and trouble on the part of the lender in securing money with which to make a loan is included in the note, the transaction is usurious.

3. Where a mortgage, given primarily to secure a note for a new indebtedness, includes personally secured notes for a prior indebtedness to the mortgagee, the proceeds of a sale of the mortgaged premises should be first applied in payment of the note which is otherwise unsecured.

4. The right of personal securities to subrogation depends on whether they have first discharged the principal debt, and whether there are superior equities attaching to the mortgaged property in favor of other parties.

[Opinion filed December 8, 1888.]

Appeal from and in error to the Circuit Court of La Salle County; the Hon. Charles Blanchard, Judge, presiding.

Messrs. DUNCAN, O'CONOR & GILBERT, for appellant and plaintiffs in error.

If there is any rule of law well settled it is that the surety upon a promissory note is entitled to the benefit of all other securities for the same debt given by the debtor to the creditor. The surety upon a note secured by a deed of trust by the principal maker has the right to demand that the real estate security shall first be exhausted for its payment before recourse is had upon him. So, too, a creditor who has personal security and also property pledged for the payment of his debt, holds such property in trust for the surety, and must use it in discharge of the debt. Booth v. Wiley, 102 Ill. 84; Kirkpatrick v. Howk, 80 Ill. 122; National Exchange Bank v. Silliman, 65 N. Y. 475.

The mortgage executed by the Jacksons, to foreclose which the bill in this case was filed, was expressly given and taken to secure the payment, first, of these two $5,000 notes, and second, the note for $10,867.50. The mortgagee obtained that security in addition to the personal liability of the sureties, and by the law the sureties had the right to demand, either that the mortgaged premises should be sold and the money applied in payment of those two notes before resort could be had upon them, or, at least, that they should be subrogated to the rights of the mortgagee upon the payment by them of these notes.

Another well and thoroughly settled rule is this: that where a mortgage secures several promissory notes falling due at different times, the one first falling due is entitled to priority of payment out of the proceeds of the sale. Flower v. Ellwood, 66 Ill. 441; Herrington v. McCollum, 73 Ill. 476; 2 Jones on Mortgages, § 1699.

Messrs. WALTER REEVES and OSCAR B. RYON, for appellee and defendant in error.

LACEY, P. J. The appellee filed her bill in equity to foreclose her certain mortgage on certain real estate therein named, executed to her by Hiram Jackson and wife, William S. Jack-

son, Z. Orlando Jackson, and James Jackson and wife, dated November 5, 1883, and acknowledged December 5, 1883, made to secure three certain promissory notes, as follows: Two of said notes for a sum of $5,000 each, payable one year after date, to the appellee, with eight per cent. interest, dated October 1, 1883, and executed by Hiram Jackson, Z. Orlando Jackson, Wm. Dannell, Samuel J. Hayes, Noble O. Baldwin, and Wm. S. Jackson; and one of the said notes payable to appellee, dated November 25, 1883, for the sum of $10,867.50 drawing same rate of interest, and signed by Hiram Jackson and Z. Orlando Jackson, due October 1, 1885.

The defense made by all the signers of the first said mentioned notes as well as all the signers of the last mentioned notes, was only partial. It insists that subsequently to the execution of the notes and mortgage it was arranged between the appellee and respondents in the foreclosure proceeding, Hiram and W. S. Jackson and Wm. Dannell, that 240 acres of the land included in the mortgage should be sold to the son of Wm. Dannell, and that the purchase price thereof, which was $6,681.72, after outstanding incumbrances which were prior to said mortgage had been satisfied, should be applied as payment upon the said two $5,000 notes upon which the said Dannell was security; that, in pursuance of such agreement, Dannell purchased the land March 1, 1884, at said price, and paid therefor by giving his note and mortgage upon said land, but that appellee wrongfully applied the said amount, $6,681.72, upon the $10,867.50, instead of the first two mentioned notes.

The answer also sets up and insists on the defense of usury as against all the said notes, claiming that the loan was one entire transaction, and that the appellee reserved more than eight per cent. per annum interest on the amount, to wit, $1,720, by that amount being retained by H. N. Ryon, the agent and attorney of appellee, to procure the said loan of $20,867.50 as a bonus and charge for making the said loan over and above the rate of interest reserved in the notes, which was a device to evade the usury laws, and charges that appellee received a portion thereof and that Ryon advanced a portion of the money, to wit, $3,500. Hiram and W. S. Jackson were

the principals on the said notes, and the other signers were only sureties. The original respondents, Wm. Dannell and Hiram Jackson, having died, Cephus D. Patterson, administrator of said Dannell, deceased, and Z. O. Jackson, administrator of Hiram Jackson, deceased, were made parties defendant. On March 4, 1887, final decree was rendered in the case, disallowing the claim of the wrongful entry·of the credit claimed and disallowing a claim for usury on the two first mentioned $5,000 notes, and allowing the claim of usury on the other note to the amount of $517.50. The court found due on the said two $5,000 notes the sum of $12,139.94, and on the other note $3,556.89, after deducting the usury and applying all payments, whether of principal or interest, in the principal, and also allowing $393.42 as attorney's fee, as provided for by the mortgage.

The decree then ordered the sale of the premises to satisfy the decree rendered for the above amounts and costs of suit, and in case of deficiency in payment of the said note dated November 25, 1883, W. S. Jackson and Z. O. Jackson, and the latter as administrator, etc., to pay the amount of the deficiency of said note to appellee and for execution; and the court rendered a similar decree against the signers of the other notes for any deficiency remaining thereon, but against all the administrators to be paid in due course of administration.

From this decree Z. O. Jackson, administrator of the estate of Hiram Jackson, deceased, prosecutes this appeal, and the other respondents a writ of error, which two suits in this court have been consolidated.

The above appellant and plaintiffs in error assign several causes for error, and among them, and relied on in their brief, are, that the court erred in not making the credit on the two $5,000 notes, instead of the $10,867.50 note, and in not ordering the proceeds of the sale of the mortgaged premises to be first applied in the payment of the said two first named notes, and in not allowing the claim of usury as against all the notes, and rejecting all the interest retained in the several notes from their date till the time that they respectively became due, and only computing interest on the balance due, after deducting

all payments, whether for usury or otherwise, out of the principal of the first two notes of $5,000 each, on the several notes from the times they respectively fall due, and this court is asked to reverse the decree with directions to the court below to render a new decree on the principle above announced.

The only two questions, then, for us to pass upon here, are the questions of usury and the application of the payment of the proceeds of the land sold. Inasmuch as both questions depend to some extent upon the facts in the case as detailed in the evidence, we can more conveniently consider them together, and will do so.

Now, first, as to the manner and circumstances of the negotiations and payment of the money borrowed, as represented in the mortgage. We will not undertake to go over the evidence in detail, but we have examined it with care, and are satisfied that substantially the following state of facts concerning the matter is correct: Hiram and W. S. Jackson were insolvent and had made an assignment for the benefit of their creditors, and were indebted to the amount of about $60,000, and having an opportunity to settle with their creditors for fifty cents on the dollar, wanted to borrow of the appellee about $24,000, and made this proposition to H. N. Ryon, an attorney residing in La Salle county, Illinois, to borrow such sum of appellee. Ryon had usually acted for the appellee, who resided in Kalamazoo, Michigan, in regard to her legal business, and sometimes concerning her loans, though as a rule she negotiated them herself.

This was some time prior to October 1, 1883, but at that time he could not give them any definite answer.

In a few days, about the first of October of said year, or two or three days after, appellee came from her home in Michigan to La Salle county, Illinois, and there met one of the Jacksons personally, perhaps the father, as one was the father and the other the son, and refused to make the loan for the amount required, but agreed to loan them $10,000 on personal security named, the appellees who signed as sureties afterward being the ones agreed on. The notes of $5,000

now in question were drawn up by Ryon for appellee, and were given over to Jackson to procure the security, who afterward procured the names to be attached.

The note was then placed in the hands of Ryon to hold till the money was sent by appellee. At this time only the rate of eight per cent. interest mentioned in the note was reserved or taken.

Some days afterward one of the Jacksons came to Ryon and made an earnest appeal to him to make an effort to obtain the balance of the desired amount, or at least $10,000 more, of appellee, she then having returned to Kalamazoo. Ryon told him that he thought it would be hard to do, as he did not think she had the ready money, but could raise it if she wanted to on collaterals which he knew she held, but he would not undertake it as her agent, and would charge them $1,000 for his services in obtaining the money and in assisting the payment of it over to the creditors of the Jacksons, some of whose claims were in judgment under the compromise. None of the money, it was urged, could go into the hands of the Jacksons. This the Jacksons consented to, and Ryon went on his mission to Kalamazoo to see appellee. On his arrival there he, on account of his former relations with her in a business way, expressly told her that he came as the agent of the Jacksons, and that they were to pay him and that she must not regard him as her agent. She then told him that she would be at great expense raising the money, and she would require a bonus of about five per cent. on this last loan to pay her for this expense. On Ryon's return home he reported this to the Jacksons, and they at once agreed to give it. Appellee then being informed of this, proceeded to raise the money so agreed to be loaned; and Ryon proceeded to get up the mortgage on the real estate and the note last agreed on, which was finally accomplished about the date of the last note. The amount of the note when finally agreed on was for $10,867.50. The amount that was represented in this note was $10,350, to be paid over, and which was afterward paid over, to the Jacksons. The sum of $517.50 was the five per cent. on that sum to be paid to the appellee. In the meantime, before this was

done, the $10,000 had been paid over to Ryon for the Jacksons on the first loan, but was not yet paid to their creditors. The mortgage was drawn up and Ryon, on his own motion, so wrote it as to cover the first two notes as well as the last note, although that had not been contemplated before that time by any of the parties. The money on the last named note was raised mostly by appellee, but partly by Ryon advancing it and taking appellee's note to himself, which she afterward paid. Afterward, some time in 1884, the Jacksons negotiated and sold the part of the land above named, for which the $6,681.72 was paid, and the mortgage was released as to it, and this amount applied on the said last named note. There was an attempt made to show that the amount last named was agreed on between Ryon, acting for appellee and W. S. Jackson and Dannell; that this amount was to be credited on the two first named notes on which Dannell was security. This was in consideration that Dannell's son should purchase the land; but this is utterly denied by Ryon, and we think the contention of appellant and plaintiffs in error, all the evidence and circumstances considered, is not sustained in that particular. We have arrived at these conclusions notwithstanding the evidence of W. S. Jackson to the contrary, whose attitude in this case does not highly recommend his case or his testimony to the favorable consideration of this court.

He also seems to be contradicted by his own letter written to appellee, dated October 24, 1883, in which he tells her, "We are depending on that $10,000 still," and other like expressions. This letter shows beyond question that the loan represented in the first two notes was made independently of that represented in the last note, though they were both closed at or about the same time. We regard the loans as separate and independent and therefore the taint of usury can not inhere to the first two notes. The agreement for the loan in case of the first two notes was not in anywise dependent on the latter. The first loan was without dependence on the second. The security was agreed on and the note drawn up and signed prior to the time the last one was agreed on, and if the last one had failed the first would still have subsisted.

This disposes of the usury charged against the first two named notes. We are satisfied with the finding of the court as to usury charged against the last named note.

Taking the testimony of the appellee herself as being correct we must hold it to have been usurious. The fact that she was to be put to trouble, and perhaps expense, in obtaining the money from her creditors or even in borrowing it, can not be regarded as freeing the transaction of its usurious taint.

It was a contract, a part of which had for its object the loan of money, and without that nothing was to be paid to appellee for her trouble and expenses. If a case like this is not usurious then indeed, it would be easy to evade the statute against taking usury. But we are satisfied that the amount of usury contained in the note as found by the court is also correct. The amount of $517.50 was no doubt the sum agreed to be received by appellee, and the note made that much too large in consequence. This the court deducted, and it was correct.

The only remaining question is in regard to the proper application of the credit. The question of agreement is settled against appellant and plaintiffs in error. It now remains to be considered whether there is anything in the facts and circumstances that would make it equitable that the securities on the first two notes should be entitled to this credit to the serious impairment of the appellee's mortgage security for her note which is unsecured by personal security.

We think there are no such equitable circumstances. In the first place those who signed the first two notes as surety did so without any expectation or agreement that appellee would take any mortgage security for their benefit. They agreed to stand good for the payment of the two notes in question.

The appellee was making a loan on which she almost wholly depended for her security on the mortgage she was about to take, but in taking it, included the two notes at her own volition, with the other note.

In what manner, may it be asked, are these complaining securities injured by the application of the proceeds of the mortgage security on the debt primarily intended to be secured? They are not injured and may be benefited by the mortgage. If any of the proceeds arising from the sale of the mortgaged

premises should remain after satisfying the last note, it would be applied on the note on which they were bound as security and to that extent they would be released.    The action of the appellee in including the two first notes in the mortgage could therefore work no disadvantage to them.    The rule of law insisted on by counsel for appellant and plaintiffs in error, that the payee is required to hold the mortgage security intact for the payment of the note on which there is personal security, under penalty, in case of failure to do so, of losing the benefit of the personal security, only applies in cases where there are no counter equities in favor of the payee of the note or other persons, superior to those of such personal securities.

As to any right of the subrogation claimed in favor of the personal securities, the rule is that it would depend as to whether or not they had first discharged the principal debt, and whether there were any superior equities in favor of other parties attaching to the mortgaged or pledged property. The question can not be determined by any technical consideration as to which of the two or three named notes in the mortgage first falls due.

The substance and right of the matter must be considered, and its proper solution should be controlled by equitable principles.    The credit, then, as we view it, was properly applied on the last note given.    As other actions of the court in computing interest and otherwise are admitted to be correct we will not examine the record further.    The decree of the court below is therefore affirmed.

*Decree affirmed.*