### Harston v. Ralston, et al.

(Decided March 9, 1917.)

#### Appeal from Barren Circuit Court.

1. **Usury—Broker's Commission.**—A commission paid to a third party for his services in procuring a loan is not chargeable as usury against the lender, where the latter receives none of the commission and does not know of its being paid, and the third party is in no sense his agent.

2. Usury—Broker's Commission.—Plaintiff applied to W. & S. to procure him a loan of $25,000.00, agreeing to pay them a commission of $2,500.00. The latter agreed to pay the defendants $2,300.00 of their commission, if the defendants would procure the loan. By taking the mortgage and notes to themselves and agreeing to guarantee the payment of the notes, defendants procured $20,000.00 of the loan from other parties. The remainder of the money they furnished themselves: Held, that as defendants could not occupy the dual relation of lenders and agents of the plaintiff, or sellers of their credit, the courts will not draw a line of demarcation between their acts in these different capacities and allow them commission pro rata on the amount which they procured to be loaned by others, and hold as usurious the pro rata of the commission on the amount furnished by them, but will regard the whole amount of the commission as usurious.

PAUL GREER for appellant.

WHITE & SMITH and DAVIS T. RALSTON for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

J. R. White and Ed. H. Smith compose the law firm of White & Smith. In connection with their profession they make abstracts of titles and procure loans on farm property. T. F. Harston is a large land owner in Barren county and was heavily involved. In the early spring of 1912, he applied to White & Smith to procure him a loan of $25,000.00 on his farm for a period of five years, and agreed to pay them a fee of $2,500.00 if they were successful. White & Smith endeavored to place the loan with several insurance companies, but, being unable to do so, they applied to W. B. Smith and Howe Ralston. W. B. Smith is the father of the junior member of the firm of White & Smith and is president of the First National Bank of Glasgow. Howe Ralston is the cashier of the same bank. White & Smith, while not retained as counsel, transact most of the legal business for the bank. W. B. Smith and Howe Ralston, who will hereafter be referred to as Smith & Ralston, agreed to procure the loan for the sum of $2,300.00. Up to the time of the arrangement with Smith & Ralston the agreement between Harston and White & Smith was verbal. Thereupon it was reduced to writing in the following form:

"For and in consideration of $2,500.00 we will procure for you a loan of $25,000.00 on five years' time at

6% per annum, payable annually, secured by a first mortgage on your farm. This $2,500.00 will include all attorneys' fees for examining title and making abstract and preparing mortgage.

"WHITE & SMITH.

"To T. F. Harston, 10th day of June, 1912.

"The foregoing proposition is accepted. 10th day of June, 1912.

"T. F. HARSTON."

On June 11, 1912, Harston executed to Smith & Ralston five promissory notes for $5,000.00 each, due in five years and bearing interest at the rate of 6 per cent. per annum, payable annually, and containing a provision that upon the default of any payment of interest the notes should become due and collectible. At the same time Harston and his wife executed a mortgage on his farm to secure the notes. White & Smith prepared and delivered an abstract of title to Harston, who in turn delivered it to Smith & Ralston. Thereafter Smith & Ralston had deposited to Harston's credit in the First National Bank the sum of $25,000.00. On July 30, W. B. Smith drew up a check on said fund for $2,500.00, payable to White & Smith. The check was signed by Harston and delivered to White & Smith, who collected the money and paid to Smith & Ralston the sum of $2,300.00. On the same day, White & Smith executed and delivered to Harston a writing, acknowledging receipt of the $2,500.00 "in full for legal services rendered in procuring loan and abstracting title to three farms on Barren river." On July 31, 1912, the law firms of Porter & Sandidge and Baird & Richardson each gave to Smith & Ralston a written opinion as to the title of the Harston lands. Neither firm, however, made any charge for their services. The remainder of the money deposited to Harston's credit was paid out on Harston's debts or on his checks in due course of business during the early part of August. On September 12, the mortgage was recorded. When recorded it bore the following endorsement:

"The notes mentioned herein have been assigned as follows: One to O. F. Bridges, of Gallatin, Tenn; two to F. A. Richardson, of Denver, Colo.; one to Howe Ralston, Glasgow, Ky., and one to C. T. Ellis, Glasgow, Ky.

"W. B. SMITH,

"'HOWE RALSTON.

"The above assignment acknowledged before me this 21st day of Aug., 1912.

"HARRY G. SMITH,

Notary Public."

Harston, with the consent of Smith & Ralston and other creditors, sold 300 acres of the land, and on November 2, 1914, assigned to Smith & Ralston purchase money notes aggregating $15,000.00 as security for the mortgage notes. On June 11, 1915, Smith & Ralston and other creditors of Harston joined with him in executing to J. R. White a deed of trust for the purpose of enabling White to sell Harston's land and settle his debts. Before this plan was carried into effect, however, Harston procured another loan, which was used in paying off the mortgage and his other indebtedness. Whereupon White and others executed to Harston a quit claim deed to the property.

On October 8, 1915, this suit was brought by Harston against Smith & Ralston to recover the $2,500.00, either as usury or as having been received by them in violation of a trust. Subsequently, Howe Ralston, as administrator of C. T. Ellis, deceased, was made a party. The defendants denied the material averments of the petition, and, after setting out the foregoing facts, alleged that they were employed by White & Smith to procure the loan; that they were unable to procure it by the notes of Harston, secured by a lien on his lands, but were compelled to, and did, endorse and guarantee the payment of the notes, and did further secure the same by the deposit of collateral security of their own. By these means they procured from Felix Richardson the sum of $10,000.00; from C. T. Ellis, deceased, $5,000.00; from O. F. Bridges, $5,000.00, and, being unable to raise the remaining $5,000.00, Howe Ralston individually furnished that sum in order to complete the loan. They further alleged that White & Smith were not their agents in making the abstract or passing on the title, and that they themselves were not the agents of their assignees, who knew nothing of the arrangement with White & Smith and received none of the proceeds of the $2,500.00 check. The trial court held, in substance, that Smith & Ralston were not lenders, except to the extent of the $5,000.00 furnished by Ralston, and that the portion of the $2,500.00 which Smith & Ralston received was paid as a commission for their services in procuring

the loan. He, therefore, concluded that Smith & Ralston were entitled to their commission *pro rata* on the amount that they procured to be loaned by others, but that the *pro rata* of the commissions which they received on the money loaned by them, or either of them, was usurious, and rendered judgment against them for the sum of $500.00 and costs. From the judgment so entered plaintiff prosecutes an appeal, not only against Smith & Ralston, but against Felix Richardson and C. T. Ellis' administrator.

There is no basis whatever for any recovery against Richardson or the estate of C. T. Ellis, for the very simple reason that neither Richardson nor Ellis received any of the commission or knew of its being paid, and Smith & Ralston were in no sense their agents in procuring the loan.

In support of their contention that the transaction with them was not usurious, the argument for Smith & Ralston is as follows: A borrower may employ another as agent to procure a loan and the payment of a commission to such agent is in no sense usurious. A borrower may also pay another for the loan of his credit and the compensation paid therefor is not usurious. Plaintiff being unable to procure the money in any other way, employed White & Smith to negotiate the loan, and agreed to pay them a commission of $2,-500.00. Thereupon, White & Smith employed Smith & Ralston to assist them in the negotiation and agreed to pay Smith & Ralston a portion of their commission. Smith & Ralston did not agree to make the loan themselves, but merely to obtain the money from others, and to this end the mortgage and notes were executed to them in order that they might guarantee their payment to the parties from whom the money was to be obtained. They not only endorsed the notes, pledged other collateral of their own to secure their payment, but kept up the payments of interest when plaintiff himself was in default. The only reason that a portion of the money was furnished by Ralston was because of their inability to secure so large a sum from other parties. The commission which they received was simply a fair compensation for their services in procuring the loan and for the loan of their credit to plaintiff. In considering the question, we shall accept as true the statement of Smith & Ralston that they did not themselves lend all the

money with the expectation of rediscounting the notes, but that they arranged beforehand to procure the money from Richardson, Bridges and Ellis, and that the loan was closed with the understanding that the money was to be thus obtained. What would have been the effect of the transaction if all of the money had been obtained from third parties, it is unnecessary to decide. As the case stands, Smith & Ralston not only occupy the position of lenders, but claim to have acted as plaintiff's agents in procuring the loan and to have sold to him their personal credit. It is clear, we think, in a transaction like this, that a party cannot occupy the dual position of lender and agent of the borrower, or lender and seller of his credit. If such were the rule, the statute against usury would be of no avail, for in every case the lender could set up the claim that the money which he received, in addition to the legal rate of interest, was paid him as commission for his services as agent, or as compensation for a loan or sale of his credit. It cannot be doubted that Smith & Ralston were partners in the transaction. Whatever either did enured to the advantage or detriment of the other. A note executed to both and endorsed by them to Ralston, who furnished the money, was, in effect, a loan by both. Since they could not act in the dual capacity of lenders and agents of the borrower, or lenders and sellers of their credit to the borrower, the courts will not draw a line of demarcation between their acts in these different capacities and allow them commission *pro rata* on the amount which they procured to be loaned by others, and hold as usurious the *pro rata* of the commission on the amount furnished by them, but will regard the whole amount of the commission as usurious. It follows that the trial court, instead of rendering judgment against Smith & Ralston for $500.00, should have rendered judgment against them for $2,300.00, the total amount received by them.

Judgment reversed and cause remanded, with directions to enter judgment in conformity with this opinion.