## Commonwealth Farm Loan Company v. Caudle, Administrator, et al.

(Decided June 13, 1924.)

### Appeal from Christian Circuit Court.

1. Mortgages—Precipitation Clause Held to Refer to Interest Notes as Well as Principal Notes.—Precipitation clause in mortgage held to refer to interest notes as well as to principal notes.

2. Usury—Company Lending Own Funds Cannot Charge Broker-age Over Legal Interest Rate.—A company lending its own money cannot charge brokerage where interest and brokerage aggregate a sum in excess of legal interest.

3. Usury—Legal Rate of Interest where Notes Executed in One State and Payable in Another.—Where notes were executed in Kentucky and made payable in Missouri, parties could not lawfully contract for highest legal rate of interest in either state where it is an avoidance of usury laws of Kentucky.

4. Corporations—Statute as to Appointment of Agent in State Held Inapplicable to Loan.—Ky. Stats., section 571, requiring foreign corporations doing business in state to designate an agent upon whom process may be served, did not affect a loan applied for in state requiring approval of application in another state, though notes and mortgage were executed in state.

5. Corporations—Statute Requiring Designation of Agent in State Penal and no Presumption Indulged to Bring Transaction Within Scope.—Ky. Stats., section 571, requiring foreign corporation to designate agent in state on whom process may be served, failure to do so rendering its transactions unenforceable, is drastically penal, and no presumption should be indulged to bring any transaction within its scope.

CHAS. CAMPBELL and MILLER & ROWE for appellant.

TRIMBLE & BELL, H. W. LINTON, McKENZIE & SMITH, and THOMAS P. COOK for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming on original and cross appeals.

Appellant, a Missouri corporation, was, as its name indicates, engaged in the lending of money on farm lands, and appears to have also at times sold or rediscounted the paper received by it in such transactions.

In 1916 the Caudles owned about 1,000 acres of farming land in Christian county, and desiring to con-solidate their indebtedness and pay off several liens al-ready existing on the property, sought a loan from ap-pellant of $35,000. It had an agent or correspondent located at Clarksville, Montgomery county, Tennessee, and his territory embraced several counties in Tennessee, as well as Christian and other counties in Kentucky.

Accordingly in April, 1916, the Caudles, through this agent (Fort) made application to appellant on its printed form for such loan, and therein appointed it their agent to procure the same for them. At the same time they signed a separate paper agreeing to pay appel-

lant for procuring the loan a commission of 5% of the amount payable in cash.

These instruments were turned over to Fort, the local agent or correspondent, and by him sent to appellant's main office at St. Louis, and there on May 23rd, 1916, the application was accepted by appellant's finance committee, which body, it appears, alone had such authority.

The amount of the loan was evidenced by the execution of 70 notes for $500 each, dated June 8th, 1916, the principal notes each being due on June 8th, 1921. The interest at the rate of 6%, however, on each of them was payable semi-annually, and there was attached to each $500.00 note ten interest coupons or notes which themselves bore interest at 6% after maturity.

The semi-annual interest payments were made for three and a half years, when there was a failure to pay the 8th and 9th installments. Accordingly on the 26th of May, 1921, before the due date of the principal notes, this action to foreclose the mortgage was instituted, the plaintiff claiming the right under a precipitation clause contained in the mortgage. The defense was (a) that the action was prematurely brought, which involves an interpretation of the precipitation clause; (b) that the transaction was usurious, which involves the determination of the question whether the $1,750.00 paid in the form of compensation for procuring the loan, in addition to the 6% interest promised in the face of the notes, constituted usury; and (c) whether because of appellant's failure to designate an agent in this state upon whom process might be served, as is provided in section 571, Ky. Stats., it was precluded from maintaining this action at all.

Other subsequent and subordinate lienholders appeared in the action and asserted their several liens, and the court upon a submission adjudged appellant the first and superior lien upon the lands, and directed a sale of them for the payment of all liens. The judgment for appellant was for the principal sum of $35,000.00, as well as the several unpaid installments of interest, but crediting the whole sum by $1,750.00, with interest from June 8th, 1916, so as to purge the same of usury. To so much of the judgment as directed the last named credit appellant excepted, and appellees excepted to the remainder of the judgment.

On this appeal by appellant, appellees have been granted a cross-appeal, and the three questions stated are presented by the two appeals.

The precipitation clause in the mortgage is:

"If the maker or makers of said notes shall fail to pay any of them when due; or any note given in renewal of any note herein; or any notes given as evidence of interest on any extension of the time of payment of the debt herein secured when the same shall be due; or there is failure to comply with any of the foregoing covenants or agreements; the whole sum of money herein secured shall thereupon become due and payable at the option of the second party without notice, and this mortgage may be foreclosed."

The trial court sustained a demurrer to the paragraph of the answer asserting the action was prematurely brought, because of this precipitation clause, but as a matter of fact the final judgment was not entered in this action until April, 1922, more than a year after the maturity of all the principal notes, and there was an amendment filed thereafter asserting the whole lien.

There was attached to each of the principal notes for $500.00 ten other notes for the several installments of interest to become due at the semi-annual periods, and it was provided in the face of each of those interest notes that they likewise should bear interest at 6% after their maturity. It is apparent, therefore, that when it was provided in the mortgage, "if the maker or makers of said notes shall fail to pay any of them when due," the whole debt should become due at the option of the mortgagee without notice, the language had reference not only to the principal notes of $500.00 but to the interest notes which also bore interest after maturity, as well. For manifestly the mortgagee's security might be menaced or endangered by the accumulation of interest on the installments of interest as well as the accumulation of interest on the principal notes. The purpose of a precipitation clause is not only to give the debtor an incentive to pay promptly, but is likewise to give the creditor authority when his debt is accumulating so that the security might not be sufficient to cover it, to enforce the collection of the whole debt.

We are of opinion, therefore, that the language of the precipitation clause in the use of the words "said

Commonwealth Farm Loan Co. v. Caudle, Admr. 765

notes" had reference to the interest notes as well as to the principal notes, and that the action of the court in sustaining the demurrer was proper.

The resistance by appellant of the usury claim is first based upon the argument that the $1,750.00 was no part of the interest charge; that it was in fact compensation paid and agreed to be paid to appellant by appellees for procuring the loan for them, and that appellant in rendering that service to appellees was acting in the capacity of a broker. A complete answer to this contention is the admitted fact that appellant loaned to appellees its own funds, and took from them obligations directly payable to itself, as well as a mortgage on the lands in question to secure its payment.

On its face, therefore, the transaction being directly between the lender and the borrower, it is pure fiction to say that the lender who furnishes his own money to a borrower is acting in the capacity of a broker, and is therefore entitled to compensation not only for the use of his money so furnished, but for such services rendered. It requires no argument to show that this is nothing more nor less than an effort to evade the usury laws.

But it is said that although the notes were executed in Kentucky they were made payable in Missouri, and therefore the parties might lawfully contract for the highest legal rate of interest in either state; and that as the courts of one state will not take judicial notice of the usury laws of another, and as there is no pleading setting up what the usury laws of Missouri are, the presumption is that the rate contracted for at the place of payment is legal.

As a general proposition and in the absence of any purpose to evade the usury laws, or exact more than the lawful rate for the use of money by resort to some scheme or device, this rule might be applied. But here we have a company loaning directly to a borrower its own money, and in addition to charging the lawful rate for the use of that money it exacts from him in advance a payment of 5% of the amount of the loan, under the guise of a charge for procuring the loan.

The question is not different from that of foreign building and loan associations who loan money in this state and make the loans payable in another state, and then under the guise of payments for stock, assessments, etc., in the building and loan association charge and exact

usurious rates of interest. Such transactions have often been denounced by this court as attempted evasion of our usury laws, although in some of the cases it has been specifically provided by contract that it is made with reference to the laws of another state, such provisions have not been permitted to operate so as to evade our usury laws.

As said in the case of U. S. S. & L. Co. v. Scott, 17 R. 1244:

> "Where such a corporation employs the usual agencies to solicit and transact business in this state, and contracts for the payment of premiums and interest in excess of the rate authorized here, the transaction will be denounced as an attempted evasion of our laws, whatever may be the nominal rate specified or artifice adopted; and this, though it be specifically provided that the contract is made with reference to the laws of the foreign state. Such a provision only makes the intent to evade the more manifest."

The same doctrine was subsequently approved and reiterated by this court in the case of Locknane v. U. S. S. & Loan Co., 103 Ky. 275, wherein other authorities to the same effect are discussed. See also Loan Association v. Harris, 98 Ky. 41; and Emig v. Life Insurance Co., 127 Ky. 596.

We therefore conclude that the court's judgment on this branch of the case was free from error.

Section 571, Ky. Stats., requires all corporations, except foreign insurance companies, carrying on any business in this state to have at all times one or more known places of business therein, and an authorized agent or agents upon whom process may be served. Under that statute it has been held that a foreign corporation doing business in this state which has not complied with its provisions cannot enforce in the courts of this state the collection of any amount due to it on a contract so entered into in this state. Fruin-Colnon Co. v. Chatterson, 146 Ky. 504; Oliver Co. v. Louisville R. R. Co., 156 Ky. 628.

But it is apparent that under subsequent opinions of this court that ruling has no application here. In the case of Citizens' Trust Co. v. Hays, 167 Ky. 560, the agent of a guaranty company had in his hands as such certain bonds to indemnify his company as the surety on a guaranty bond. The agent personally borrowed from

an Indiana bank money and pledged as collateral the bonds he held as such agent. In doing so he employed a' broker who had previously loaned money for the Indiana bank, and the broker communicated with the Indiana bank, either by mail or by telephone, and the bank at its office in Indiana agreed to make the loan, and the court held that the minds of the parties met and the transaction was closed in Indiana, although the Indiana bank at the time had on deposit in a bank in this state funds from which the loan was afterwards made; no valid distinction can be drawn between the situation there and the facts in this case. Here the Caudles executed their application for the loan, which was forwarded to appellant's office in St. Louis, and there finally accepted and approved by appellant at its St. Louis office by the only officials having authority to do so; and although thereafter the notes and mortgage were executed in Kentucky, the fact remains that the minds of the parties met and the contract was closed in St. Louis. The Hays case and the doctrine therein announced has, recently by this court, been reaffirmed in the case of Hughes v. R. O. Campbell Coal Co., 201 Ky. 839. The statute has no application to a contract made in another state.

In each of those cases the court recites the manifest fact that the statute in question being drastically penal, no presumption should be indulged to bring any given transaction within its scope.

The judgment in this case is in accord with the equities as between the parties, and it is therefore affirmed on both the original and the cross appeals.