# Union Central Life Insurance Company v. Edwards, et al.

(Decided April 26, 1927.)

## Appeal from Pulaski Circuit Court.

1. Usury.—In view of Ky. Stats., section 2219, one who lends his own money to a borrower may not charge brokerage fees or commissions, where such fees, together with interest, exceed legal rate of interest.

2. Usury.—When a person having funds to lend constitutes another his agent for that purpose, with full authority to act for him, agent may not lend money at full legal rate of interest and in addition exact from borrower fees or commissions for effecting the loan, in view of Ky. Stats., section 2219.

3. Usury.—Commission paid by a borrower to his own agents for procuring a loan is not "usury," within Ky. Stats., section 2219.

4. Usury.—Under Ky. Stats., section 2219, defining usury, lender of money may properly charge borrower necessary reasonable expenses incident to loan in addition to legal interest rate without incurring penalty of statute.

5. Usury.—Where defendant applied to plaintiff insurance company through intermediaries who had arrangement with plaintiff's state financial correspondent, authorized only to solicit applications for loans to be submitted to plaintiff in writing by applicant, but with no authority to make contracts binding on plaintiff, held, that such intermediaries, including correspondent, were not plaintiff's agents authorized to lend money, and plaintiff was not liable for their false representations which induced defendant to make an annual payment on loan in addition to the 20 payments called for by mortgage and notes thereunder, which payment intermediaries divided between themselves, if defendant had notice of limitations on their authority.

6. Usury.—Where defendant's written application to plaintiff insurance company for 20-year farm loan payable annually was made direct to plaintiff, and plaintiff's check was payable directly to defendant, and mortgage recited that it was to secure loan of $12,000, which would be repaid in full when defendant paid 20 notes of $1,046.22 each, one of which was payable annually commencing year after date of loan, and each note recited that no agent was authorized to make any contract differing from that printed on note or mortgage, held, that defendant had full notice that intermediaries who procured loan had no authority to collect an annual payment at time of loan, and plaintiff was not liable for their fraudulent collection of such sum, no part of which was received by plaintiff, and loan was not usurious, under Ky. Stats., section 2219.

BEN V. SMITH & SON for appellant.

WILLIAM WADDLE and JAMES DENTON for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

On August 1, 1919, appellant, Union Central Life
Insurance Company, of Cincinnati, Ohio, lent to appellee
J. W. Edwards $12,000, on the 20-year amortization plan,
taking from him, as evidence of the indebtedness, 20 pro-
missory notes for $1,046.22 each, one of them due each
year for 20 years. To secure the payment of these notes,
appellees Edwards and wife executed to the insurance
company a mortgage on 479 acres of land owned by him,
located in Pulaski county, Ky. Appellee paid the first
three notes, and, having defaulted in the payment of the
fourth, under a precipitation clause, the unpaid notes all
became due, and appellant instituted action to enforce
their collection under the mortgage lien. Appellee de-
fended as to $1,046.22 paid the day the loan was effected,
upon the theory that it was usury, and sought to have
credit by that amount paid as of August 1, 1919. The
chancellor so adjudged, and from that judgment this
appeal is prosecuted.

These facts appear: Andrew L. Todd, of Murfrees-
boro, Tenn., by written contract entered into with appel-
lant, Union Central Life Insurance Company, had been
appointed its financial correspondent, with authority to
solicit and procure applications for loans for it upon cer-
tain terms and conditions set out in the contract. Cer-
tain portions of the states of Tennessee and Kentucky
were assigned to him as his territory. Bert L. Sims, of
Lexington, Ky., had an arrangement with Mr. Todd by
which any applications that he might have for loans
would be forwarded to Mr. Todd. Mr. Sims, in turn,
made an arrangement with Rufe Ashurst, of Somerset,
Ky., by which the latter should forward to him any appli-
cations for farm loans which might be made to him. Ap-
pellee J. W. Edwards desired to borrow $12,000, and,
having learned in some way that Mr. Ashurst could pro-
cure loans, went to see him and started the negotiations
which led to appellant, insurance company, lending to
him the $12,000. Ashurst submitted the matter to Sims,
who, in turn, submitted it to Todd, and Todd furnished
appellant, insurance company, with the information that
Edwards desired a loan. It then sent its appraisers to
examine the Edwards farm offered as security for the
loan, and satisfied itself that the security was ample.

Edwards submitted to it his written and signed application for the loan which was approved by the insurance company. Edwards had an abstract of the title of his farm made and had it surveyed to establish its boundary. Pursuant to the written application, and on the judgment of its appraisers that the security offered was ample, and on the evidence of his title, as shown by the abstract, appellant, insurance company, agreed to lend Edwards $12,000, and prepared 20 notes for $1,046.22 each, one due at the end of each of the next ensuing 20 years, and a mortgage to itself from Edwards and his wife to secure it in the payment of the notes. The notes and mortgage, together with its check for $12,000, payable to Edwards, were forwarded to Mr. Todd with instructions that the check be delivered to Mr. Edwards upon his executing and delivering to him for it the notes and mortgage and his payment of the recording fees and recording tax fees. These papers were forwarded by Mr. Todd to Mr. Sims at Lexington. Sims took them to Somerset, Ky., and he and Ashurst closed the transaction. Edwards and his wife signed and acknowledged the mortgage and signed the notes, and the mortgage was recorded, and the fees were paid, and appellant's check for $12,000 was delivered to Mr. Edwards. He and Ashurst both testify that when these things were done Sims told Edwards that a cash payment of $1,046.22 was due, which, together with the 20 notes executed by him, would repay the loan, and Edwards testified that he, believing such to be the case, and relying upon the representations so made to him, then gave his check to Sims for $1,046.22, which he understood was a payment on the loan. This amount was divided among Ashurst, Sims, and Todd. The 20 notes and the mortgage were forwarded to appellant, insurance company. There is no evidence that appellant received any portion of the cash paid by Edwards or had any knowledge of that transaction.

Under these facts it is earnestly insisted for appellee, and the chancellor adjudged, that this cash payment made by appellee, together with the 20 notes, aggregated more than the repayment of the $12,000 with legal interest, and was usury.

Appellant insists that in the matter of the application for the loan the intermediaries were the agents of the borrower; that it received no part of this alleged usurious payment; that it lent the $12,000 to Edwards

upon his written application and in accordance with the terms set forth therein and in the notes and mortgage which Edwards executed and delivered to it; and that it may not be made to respond for the money procured by the intermediaries from Edwards, however it may have been procured.

It is well settled in this jurisdiction that one who lends his own money to a borrower may not charge the borrower brokerage fees or commissions where such fees, together with the interest, exceed the legal rate of interest. Commonwealth Farm Loan Co. v. Caudle, Adm'r, 203 Ky. 761, 263 S. W. 24.

It is also equally as well settled that, when a person with funds to lend constitutes another his agent for the purpose, with full authority to act for him in that particular, the agent may not lend his principal's money at the full legal rate of interest and exact from the borrower fees or commissions for effecting the loan. See Payne v. Henderson, 106 Ky. 135, 50 S. W. 34, 20 Ky. Law Rep. 1739.

It is also well settled in this jurisdiction that sums paid by a borrower to his own agents as commission for procuring a loan is not usury. See Todd's Executor v. First National Bank, 173 Ky. 60, 190 S W. 468, and Harston v. Ralston et al., 174 Ky. 509, 192 S. W. 646.

In view of these well-settled principles we may determine whether appellant may be charged with the $1,046.22 collected by the intermediaries by determining whether they were its agents in so doing, or were acting in the scope or apparent scope of their authority.

It is earnestly insisted for appellee that this case is indistinguishable from that of Payne v. Henderson, supra. A careful consideration of the facts of the two cases, however, discloses a clear distinction between them. There the appellee, Henderson, constituted Buckner & Cummings, a firm of brokers, her agents to lend her money. They were given full authority to act for her in negotiating loans. They, for her, determined when and to whom and upon what terms as to interest rates and security the loans should be made; so that in lending her money their acts were her acts. Consequently, it was held, when in making the loan of $7,500 and taking notes payable to their principal, bearing the full legal rate of interest, the agents deducted from the $7,500 lent $375 as commission for effecting the loan, that

to that extent the transaction was usurious; in other words, the situation was the same as if the lender had undertaken to do the same thing, because what was there done was done by the lender acting through her agents who had authority to act for her.

The case now at hand is clearly distinguished from that, in that here none of the intermediaries were the agents of appellant, insurance company, in making the loan. The loan was not made through an agent. It was made direct from appellant, insurance company, to appellee Edwards. It was made pursuant to appellee's written application to appellant for the loan. None of the intermediaries had ever been given authority to lend money for appellant. They were merely mediums through which the lender and the borrower were brought together; hence the distinction.

By section 2219, Kentucky Statutes, it is provided that:

"All contracts and assurances made, directly or indirectly, for the loan or forbearance of money, or other thing of value, at a greater rate than legal interest, shall be void for the excess over the legal interest."

This statute defines usury. Our legal rate of interest is fixed at 6 per cent. per annum. It is certainly true that one lending money may receive for the use or forbearance of his money the full legal rate of interest without incurring the penalty of the statute, supra. Under this statute and our opinions construing it a lender of money may properly charge to a borrower the necessary reasonable expenses incident to the loan without incurring its penalty. He has the right to require the borrower to pay the reasonable cost of ascertaining whether the security offered is ample. If the security offered is real estate he may properly charge to the borrower the reasonable cost of having abstract of title made and the reasonable expense of its appraisement. He may properly charge to the borrower the necessary reasonable expenses of having the contracts and mortgages prepared and the fees for recording the mortgages. The borrower may be made to pay these expenses incident to the loan in addition to the full legal rate of interest, because they constitute no part of the contract for the use or forbearance of the money lent.

There has grown up in this country a well-defined class of business engaged in by numbers of persons, commonly referred to as the "Loan Brokerage Business." It seems to have sprung from the necessity of some medium through which lenders and borrowers may be brought in touch with each other. The intermediaries between appellant, insurance company, and appellee, Edwards, in effecting the loan now in question appear to be engaged in that business. In acting as intermediaries between the prospective lender and borrower they appear frequently to a limited degree to act as the agents of both parties.

The part played by persons engaged in this business was well described by the Supreme Court of Georgia in its opinion in Merck v. American Freehold Land Mortgage Co., of London, Limited, 79 Ga. 213, 7 S. E. 265, where it was said:

> "Nelson & Baker had a business establishment in Atlanta. Their business was to discover borrowers and lenders, procure for borrowers loans on landed security, verify the security, and serve as a channel of communication and transmission between the contracting parties. They were middlemen stationed betwixt want and supply, and flanked on either side by other middlemen. One of these was Lattner, of Gainsville, in Hall county, who fronted, as it were, on borrowers, and another was the Corbin Banking Company of New York City, who fronted on lenders. Such was the line of intermediaries concerned in the present case."

In that case $320 commission was paid to the intermediaries, and the borrower sought, in the action on the note, to have credit by that amount, upon the theory that it was usury. Holding that such was not the case, that court said:

> "Nelson & Baker, with whom the contract for compensation was made, were neither borrowers nor lenders; they were seekers after both, and had business relations with men, such as Lattner, to aid them in finding borrowers, and with other men or corporations, such as the Corbin Banking Company, to aid them in finding lenders. This was an independent business, established and carried on by Nelson &

Baker, not in the interest of borrowers or lenders, but in their own interest. It was a lawful business, and they had as much right to pursue it for profit as a merchant or farmer or lawyer has to attend to his own lawful affairs for legitimate gain. It might be well to make it unlawful, but that is a question for the Legislature."

A comprehensive note in 21 A. L. R. appended to the case of First National Bank of Ada v. Phares may be found on page 797. On page 824, the annotator states the principle here involved thus:

"Even though the agent may act for the lender in other matters, or in some respect in connection with the loan in question, if it is clear that in procuring the loan he was acting as the agent of the borrower, a commission paid him for his services in the latter capacity will not constitute usury. Niles, v. Kavanaugh (1918) 179 Cal. 98, 175 P. 462, 1 A. L. R. 831; Merck v. American Freehold Land & Mortg. Co. (1887) 79 Ga. 213, 7 S. E. 265; Jackson v. May (1888) 28 Ill. App. 305; Richards v. Purdy (1894) 90 Iowa, 502, 58 N. W. 886, 48 Am. St. Rep. 458; Hetfield v. Newton (1846) 3 Sandf. Ch. (N. Y.) 564; Terminal Bank v. Dubroff (1910) 66 Misc. Rep. 100, 120 N. Y. S. 609; Jones v. Gay (1912 Sup.) 139 N. Y. S. 158; Brown v. Jones, 89 Misc. Rep. 538, 152 N. Y. S. 571."

The various cases cited as supporting the principle are discussed in the annotation and their consideration makes it appear that the courts are in practical accord in holding that loan brokers who act as intermediaries between lender and borrower, though they have limited authority from the lender, such as authority to procure the application, to see that the title is satisfactory, and that the papers are properly drawn, executed, and recorded, may at the same time act for the borrower in procuring the loan and be entitled to a commission for that service from him without making the lender liable therefor as usury.

The case now before us, however, does not fall clearly within the class of cases above referred to. According to the testimony the borrower paid the $1,046.22 to the intermediaries, not as a commission, but upon their representation to him that a cash payment of that amount must be paid to repay the loan when the 20

notes were paid  If such was the case—and there is no testimony to the contrary—the $1,046.22 was procured from appellee Edwards by the fraud of the intermediaries.  If, as the testimony indicates, that scheme was resorted to by the intermediaries, their purpose, doubtless, was in that way to procure a commission perhaps greater than they would have been able to contract for with the borrower.  It remains to be determined then whether appellant may be made to answer for this fraud.

It is insisted for appellees that in so doing they were the agents of appellant and were acting within the scope or apparent scope of their authority.  Sims and Ashurst do not appear to have had authority from appellant to act for it in any particular.  Todd, under the contract between him and appellant, had no authority further than to solicit and submit applications for loans, and in cases where the applications were accepted to see that the notes and mortgages evidencing the contract between it and the borrower were properly executed and recorded and forwarded to appellant and to deliver to the borrower appellant's check for the amount of the loan.  He had no authority from appellant to falsely represent to borrowers that any part of the loan was to be paid in cash and was wholly without authority from appellant to make the fraudulent representation to appellee Edwards which the evidence herein establishes was made when he signed the notes and mortgages.  If appellee had notice that the intermediaries had no such authority from the appellant, then the intermediaries in defrauding him cannot be said to have been acting within the scope or apparent scope of their authority from appellant.

The contract entered into between appellant, insurance company, and Andrew L. Todd, did not constitute him its agent to lend its money.  It merely authorized him to solicit and procure applications for loans for it with no authority upon his part to make contracts with any one binding it.  All applications for loans had to be submitted to appellant company in writing by the applicant, and the application was accepted or rejected and the loan made or not as appellant saw fit.  That the intermediaries were not its agents with authority to lend its money was clearly made manifest to appellee Edwards throughout the negotiations leading to the loan.  His written application for the loan was made direct to appellant, insurance company.  The $12,000 lent to him upon

the application was furnished to him by check—appellant's check payable to him.

Appellee applied in writing to appellant for the loan "for 20 years on an amortization plan, payable annually." The mortgage which he signed recited that it was made "to secure the payment of a debt evidenced by certain promissory notes of even date herewith, $12,000 of which is principal, signed by John W. Edwards, party of the first part, and payable to the party of the second part, at its home office in Cincinnati, Ohio; more fully described as follows:

"The first note being for $1,046.22, and remaining 19 notes for $1,046.22 each, the first note being payable on August 1, 1920, and one of the remaining notes being payable on the same day in each of the succeeding 19 years."

Thus by clear and simple language the borrower was given to understand that the $12,000, which was lent to him by appellant, would be repaid in full when he paid the 20 notes which he executed. On the face of each of the 20 notes there was printed the following statement:

"No agent is authorized to make any contract, verbal or written, differing from that written and printed on the face of the note and the instrument securing it, nor is an agent permitted to collect any part or whole of it, unless indorsed to him for collection by an officer of company."

Thus appellant brought home to appellee full knowledge of the limitation of the authority of the intermediaries, in so far as they were acting as its agents. The information furnished appellee by appellant in the writing evidencing the contract between them leaves no ground upon which to found the conclusion that in collecting the $1,046.22 as they did the intermediaries were the agents of appellant or were acting within the scope or apparent scope of their authority from it. Appellant received no part of this sum. There is no usury embraced in the 20 notes executed by appellee to appellant, and for the reasons indicated, under the facts here appearing, it is not responsible for the fraud of the intermediaries.

Reversed, and remanded for judgment in accord with this opinion.