## Whitt v. Kentucky Oil Producing Company, Incorporated.

(Decided February 28, 1928.)

### Appeal from Allen Circuit Court.

1. Estoppel.—Where corporation caused title to oil lease to be taken in name of its president individually, and lease was recorded in county clerk's office in county where leased premises were located, corporation held estopped to assert title as against lien of one innocently loaning money to president and taking mortgage on lease as security.

2. Mines and Minerals.—One loaning money to individual and taking mortgage on oil lease to which he had record title as security held not to have been put on inquiry as to corporation's beneficial ownership of lease by mortgagor's brother's statement during negotiations that he had beneficial ownership.

3.  Mines and Minerals.—One loaning $11,000 to individual, and taking mortgage on oil lease to which he had record title as security, held not to have been put on inquiry as to corporation's beneficial ownership of lease by mortgagor's brother's willingness to pay $1,000 to procure loan.

4.  Banks and Banking.—President of bank had no right to appropriate deposit in his bank to payment of indebtedness due to him as individual, but could reach deposit only by suit, and attachment.

5.  Mines and Minerals.—When bank president innocently as individual loaned money on mortgage security to record owner of oil lease, true owner being corporation, and mortgagor deposited proceeds in lender's bank, lien of mortgage was not affected by fact that bank honored checks on such deposit after its president learned of corporation's ownership and mortgagor's want of title.

6.  Usury.—$1,000 paid to lender for making $11,000 loan, bearing 6 per cent. interest, held usury, which should be credited on debt.

7.  Mines and Minerals.—Mortgage on oil lease, leasehold estate, and all of its appurtenances, entitled mortgagee to lien on money owing by pipe line companies for oil from leased premises; "leasehold estate" consisting of right to take oil from leased premises and appropriate it to use and benefit of lessee.

F. R. & N. G. GOAD for appellant.

JOHN B. RODES, MAX B. HARLIN, W. D. GILLIAM and F. C. HOLLINGSWORTH for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

Appellee, Kentucky Oil Producing Company, is a Delaware corporation. It was organized in the year 1925. C. W. Owen was its president, and his brother, Fred Owen, was its treasurer. They and its other stockholders were residents of New York. About January 1, 1926, the corporation purchased the Davenport lease in Allen county, Ky. Under an arrangement satisfactory to the officials of the corporation, and for the reason that it was thought that this and other deals it might desire to make could be made cheaper, if it be not disclosed that a foreign corporation was interested, title of the Davenport lease was taken in Fred Owen, and the lease so taken was recorded in the clerk's office of the Allen county court. He was also the field manager of appellee corporation, and had charge of the development of the Devenport lease, though it appears that appellee corporation furnished the money with which the lease was de-

veloped. In August, 1926, C. W. Owen appeared in Winchester, Ky., and negotiated with appellant, A. T. Whitt, to procure a loan for him to the amount of $11,000, and offered to give a mortgage on the Davenport lease as security. Owen and Whitt had become acquainted with each other several years previously, at a time when they both were interested in oil properties in Eastern Kentucky. Whitt was unable to find a money lender to supply the needs of Owen, but, having means of his own, concluded to make the loan himself. Fred Owen joined with C. W. Owen in the note to appellant, Whitt, for $11,-000, and the former executed a mortgage on the Davenport lease to secure the payment of the note.

Before consenting to lend the money on the security offered, appellant, Whitt, corresponded with Goad & Goad, attorneys, of Scottsville, Ky., and had the title of the Davenport lease investigated, and was assured by these attorneys that the title of record was in Fred Owen and that it was unincumbered. The mortgage was acknowledged on August 9, 1926, and was recorded in the Allen county court clerk's office on August 12, 1926. Subsequent to this time appellee corporation procured an assignment of the Davenport lease from Owen to it, which was recorded. This action was instituted by appellee corporation, and it sought to annul and to have declared void the mortgage from Fred Owen to appellant, Whitt, and to remove the cloud from its title of the Davenport lease occasioned by the mortgage. Whitt answered, and pleaded the bona fides of the transaction by which he lent $11,000 to C. W. and Fred Owen, and took the mortgage to secure its payment, and by way of counterclaim sought to enforce his mortgage lien. Upon the trial below the chancellor adjudged that the mortgage be canceled and held for naught, and that appellee hold the lease free of the lien sought to be imposed by the mortgage executed by Fred Owen. The appeal is from that judgment.

The foregoing are the salient and, as this court views the case, the conclusive facts hereof. No principle of law perhaps is better settled or more uniformly applied than that, where the true owner of property holds out another, or permits him to appear, as the owner of, or as having full power of disposition over, the property, and innocent third persons are led into dealing with such apparent owner or person having such apparent power of disposition, they will be protected. See Craig v. Turley, 86 Ky.

636, 6 S. W. 648, 9 Ky. Law Rep. 769; Wells v. Higgins, 1 Litt. 299, 13 Am. Dec. 235; Butler v. Stark, 79 S. W. 204, 25 Ky. Law Rep. 1886; Wilson v. Scott, 13 Ky. Law Rep. 926; Baldwin v. Ripley First National Bank, 3 Ky. Law Rep. 822; Kendall v. Webber, 13 Ky. Op. 206, 6 Ky. Law Rep. 513; 21 C. J. section 177, p. 1172, and note 77 thereunder. That principle of law and the undisputed facts hereof are conclusive of the questions presented by this appeal. Appellee corporation, for purposes of its own, consented, and even caused the title of the lease in question to be taken in the name of Fred Owen, and the lease was placed of record in the county court clerk's office of the county where the leased premises were situated. By so doing it held him out to the world as the owner of the lease, and armed him with the opportunity to deal with innocent third persons on the strength of his ownership thereof.

There is not the slightest evidence that, when appellant, Whitt, lent to C. W. and Fred Owen $11,000 on the strength of Fred Owen's ownership of the lease in question, and took from him the mortgage thereon to secure its payment, he had any character of notice or knowledge of any facts calculated to create suspicion that any one else owned any interest in or had any claim against this lease. When application was made to him for the loan C. W. Owen presented to him, as evidence that his brother, Fred Owen, owned and held the lease in question, an abstract of title prepared by Goad & Goad, regular practicing attorneys of the Allen County, Ky., bar. This abstract, however, made no showing as to the state of the title subsequent to the recording of the lease in January, 1926. Appellant would not lend the money on this showing, but corresponded with that firm of attorneys, and had the title investigated down to that time. He was assured by the attorneys that no change in the title had taken place, and that there were no liens or incumbrances against the lease which was proposed to be mortgaged to secure the loan. In doing this appellant did all that the law requires. Having ascertained that the title of record was in Fred Owen, and that the lease was free of liens and incumbrances, he had the right to rely upon these facts appearing of record, and was not required to make further inquiry. The facts here appearing constitute a perfect estoppel, forbidding appellee to claim title as against appellant's mortgage lien.

It appears that, while negotiating for the loan, C. W. Owen told appellant that the lease in question really belonged to him, but that the title was in his brother. Appellee insists that this was sufficient to put appellant on inquiry, and that the inquiry, pursued far enough, would have disclosed that Fred Owen, though appearing of record to be the individual owner of the lease, actually held it as trustee, not for C. W. Owen, as appellant was informed, but for appellee, Kentucky Oil Producing Company. The statement by C. W. Owen that though his brother, Fred Owen, appeared to be the owner of the title of record, he in reality owned the lease, did not impose upon appellant, Whitt, to whom application had been made for a loan, the necessity of making further inquiry, because title of record was in Fred Owen, and he and his brother, who claimed to be the beneficial owner, both joined in the note, and the owner of the title of record, with the consent, and at the instance, of the one who claimed to be the beneficial owner, placed the lease in lien to secure the repayment of the loan.

It is insisted for appellee that the willingness upon the part of C. W. Owen to pay $1,000 to appellant, Whitt, to procure a loan of $11,000 was sufficient of itself to put appellant on notice and inquiry which, pursued far enough, would have disclosed that appellee owned the lease in question. To this contention we cannot agree. Appellant made the only inquiry imposed upon him by the law under the facts here appearing. He inquired and ascertained that the title of record of the lease upon which he was acquiring a mortgage was in the one who mortgaged it to him. The only question which the offer of $1,000 as a commission for procuring this loan would naturally arouse in the mind of a prospective lender would be whether the proposed security was sufficient.

Appellant, Whitt, was the president of a bank in Winchester, Ky., when he lent the $11,000 to C. W. Owen and Fred Owen. The proceeds of the loan were deposited in that bank to the credit of C. W. Owen, and were paid out in checks drawn from time to time by him. Notice that appellee corporation claimed to own the lease in question was first brought home to appellant, Whitt, about October 20, 1926. At that time there remained to the credit of C. W. Owen in appellant's bank the sum of $4,740 of the proceeds of the loan. Appellant got in immediate touch with Owen, and succeeded in obtaining from him a check against the account with his

bank for $4,500 which went as a credit on the note. The remaining $240 was paid subsequently by the bank on checks drawn by Owen which were presented for payment in due course. It is insisted for appellee that in any event the $240 was paid after appellant acquired notice that it owned the lease, and that therefore he, rather than it, should lose it. This argument is founded upon the false assumption that appellant, Whitt, furnished this money to C. W. Owen after he acquired knowledge that the lease in reality was the property of appellee. The money had been furnished by appellant to Owen long prior to this time. It was on deposit to the credit of Owen in a bank. If Owen had owed a debt to the bank, and had had money on deposit with the bank, it would have had authority to appropriate the money to the payment of its debt. That was not the case here, however. Owen owed the debt to appellant, Whitt. The fact that the latter was president of the bank with which Owen had money on deposit did not give him authority to appropriate this money to the payment of his individual debt. Appellant had no way of reaching this money, unless Owen consented, except to sue and attach. His debt was secured by a mortgage on the lease. Appellee had armed Owen with the ability to incur the indebtedness and put the lease in lien to secure it by consenting that he take the title of its lease in his name. Appellee also might have reached the money on deposit in the bank by suing Owen who had wronged it and attaching this fund. For these reasons, the fact that the bank in which Owen had deposited the money paid $240 on Owen's checks after appellant, Whitt, was notified that appellee claimed to own the lease which had been mortgaged to him, does not make appellant responsible to appellee for the $240 so paid.

Pages from two or three New York newspapers dated August 19 and 20, 1926, containing accounts of the defalcation and disappearance of C. W. Owen from New York, are on file as evidence herein. They were introduced in evidence at the instance of attorneys for appellant through a witness for appellee while being cross-examined. There is no evidence to be found in the record to establish when these newspaper articles came to the attention of appellant, Whitt. If that contained in the earliest dated of the papers reached Whitt as quickly as newspapers of that date printed in New York could be received in Winchester, Ky., it was fully two weeks after

the money had been borrowed by Owen, and nearly two weeks after the mortgage given by Owen to Whitt had been placed of record in Allen county, Ky. Whitt had long before that time furnished the money to Owen. It is possible that part of the proceeds of the loan, in addition to the $4,740, heretofore considered, was paid out by the bank on Owen's checks after these newspaper articles came to the attention of appellant, Whitt, but, if so, for the same reason that he cannot be held responsible for the $240, as above pointed out, he cannot be held responsible for the amount so paid.

As has been indicated $1,000 of the $11,000 loan was paid to appellant, Whitt, for the services rendered by him in procuring the loan. It was contemplated when Owen first entered into negotiations with Whitt that the latter would procure some one else to make this loan, and Owen then agreed to pay him $1,000 for procuring a lender. The persons from whom it was then contemplated the loan would be procured were found to be out of Kentucky; and, after assuring himself that the title of the lease offered as security was in Fred Owen, and was ample as security, appellant decided to furnish the money himself, and, when the deal was consummated, Owen paid the same commission he had agreed to pay if appellant would procure the loan from others. The loan was made at full 6 per cent. interest. Appellee pleaded that this $1,000 so paid was usury, and should be credited on the debt which its lease was mortgaged to secure. This contention of appellee is well founded. The question was fully discussed by this court's recent opinion in the Union Central Life Insurance Co. v. Edwards et al., 219 Ky. 748, 294 S. W. 502, where it was written:

"It is well settled in this jurisdiction that one who lends his own money to a borrower may not charge the borrower brokerage fees or commissions where such fees, together with the interest, exceed the legal rate of interest."

See, also, Commonwealth Farm Loan Co. v. Caudle, 203 Ky. 761, 263 S. W. 24, and Harston v. Ralston, et al., 174 Ky. 509, 192 S. W. 646. Upon authority of those cases, and for the reasons therein announced, the $11,000 debt evidenced by C. W. and Fred Owen's note to appellant, Whitt, will be credited by $1,000 as of date of the note.

Pipe line companies to which the oil produced from the lease in question had been sold are parties hereto, and have answered and disclosed the amount owing by them on account of such oil. The question as to whether as between appellant and appellee the former has a lien upon, and is entitled to a sufficient amount from, the proceeds of the oil to settle the debt sued on herein, must, as this court views the question, be decided in favor of appellant. By the mortgage in question the lease and the leasehold estate and all of its appurtenances were mortgaged unto appellant to secure the $11,000 debt. The leasehold estate consisted of the right to take the oil from the leased premises and appropriate it to the use and benefit of the lessee. The lien of the mortgagee unquestionably follows the oil or the funds from the oil so long as they can be traced. The answers of the pipe line companies disclose how much oil they have bought from the lease in question and the amount of money that they owe for it. They have answered that they are willing to pay it to whomsoever the court may adjudge. Under these facts, unquestionably appellant is entitled to a judgment directing that a sufficient amount of the proceeds of this oil which has been produced and sold from the lease in question after it was mortgaged to him be applied to the payment of his debt.

For the reasons indicated, the judgment herein is reversed, and this cause is remanded, with direction that a judgment in conformity herewith be entered.