**KAYE v. MacMILLAN et al.**
No. 5977.

Circuit Court of Appeals, Sixth Circuit.
June 29, 1932.

J. E. Tarrant, of Louisville, Ky. (D. L. Street and Bruce & Bullitt, all of Louisville, Ky., on the brief), for appellant.

Joseph S. Laurent, of Louisville, Ky. (Jno. A. Logan, of Bowling Green, Ky., and Gordon, Laurent & Ogden, of Louisville, Ky., on the brief), for appellees.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

**8**

SIMONS, Circuit Judge.

Kaye, as receiver of United Rock Asphalt Company, appellant, and Fred C. MacMillan and A. E. Hollingsworth, appellees, were intervening lien claimants in a receivership proceeding in the court below, brought against the Miller Construction Company. United Rock claimed a landlord's lien on certain rock asphalt belonging to the Miller Construction Company, and MacMillan and Hollingsworth claim a lien on the same rock asphalt by virtue of a sale of it to them by Miller. The principal question to be answered is which of these claimed liens has priority.

For the sake of brevity and clearness, appellant will be referred to as United Rock; MacMillan and Hollingsworth as appellees, since in this controversy they are the only appellees with substantial interest, and Miller Construction Company as simply Miller. On January 25, 1929, United Rock, a Delaware corporation, leased all of its property and equipment to Miller for a period of three years, beginning February 1, 1929, upon a royalty or rental basis of $1.25 per ton on all rock asphalt produced, with a minimum of $100,000 per year. At the same time it sold to Miller a 15,000-ton stock pile of crushed rock asphalt then on the property. There was also upon the leased premises certain machinery and equipment owned by Miller and used by it in prior operations. About a week after the lease and sale Miller executed to appellees an instrument which was in form a contract of sale for the 15,000-ton stock pile, at a price of $5.50 per ton, containing also a lease of, or license to use, the rented premises for purposes of storage, and a further agreement for the sale of asphalt tonnage to be subsequently produced by Miller. By the same instrument Miller obligated itself to repurchase all asphalt sold to appellees at an increase in price of 50 cents per ton. At the conclusion of the instrument there appears the following: "Examined and approved by the United Rock Asphalt Company through and by its duly elected president, and attested by its secretary."

The foregoing statement is signed by J. H. McWilliams, president, and attested by F. T. Fitzharris, secretary, under the seal of the United Rock Asphalt Company. Among other provisions of the instrument is a clause reading as follows: "It is agreed and understood that all title and interest to each ton of rock asphalt that may be delivered in storage, as above set out, by the Miller Construction Company, shall be vested immediately in Fred C. MacMillan and A. E. Hollingsworth,

and no person or persons shall be entitled to any lien directly or indirectly derived through or under any act or omission of the said Miller Construction Company on any of the said asphalt."

Contemporaneously with the execution of the agreement above referred to Miller was paid by the appellees the sum of $93,000, and subsequently payments were made to it totalling over $99,000. Miller paid United Rock its agreed price partly in cash out of the advances received, partly by release of an indebtedness of United Rock to Miller, and the balance by assumption and payment of certain of United Rock's notes. Thereafter Miller paid United, Rock a substantial sum in cash as rent or royalty out of moneys received from the appellees for asphalt in stock or subsequently produced. On January 1, 1930, Miller, being indebted to the appellees in the sum of $100,000, executed its notes secured by accounts receivable, which were subsequently withdrawn and replaced by a mortgage on its machinery and equipment.

By section 2317 of the Kentucky Statutes, a landlord is given a superior lien on all personal property of the tenant after possession is taken under the lease for one year's rent due or to become due. When Miller went into receivership, United Rock asserted its lien for both past due and future rents or royalties upon the rock asphalt then upon the leased property, and upon Miller's equipment and machinery which had been mortgaged to the appellees. Appellees likewise claimed a lien upon both classes of property under and by virtue of its agreement and mortgage.

It is clear that United Rock's lien on the stock pile under the Kentucky statute is superior to the lien of the appellees under its agreement, unless its approval of Miller's contract with appellees or its other acts sustain the claim of the latter that United Rock's lien under the statute was waived. We may at once concede that the presumption of law is against the waiver of a lien; that intent to waive must be plain and clear; and that the burden of showing a waiver is upon the party asserting it. It becomes necessary, however, to ascertain what was the real agreement between the parties.

Miller had had some previous arrangement with United Rock for the mining of asphalt. Whatever that may have been, it can be safely assumed that their dealings were no longer profitable. A 15,000-ton stock pile had accumulated, and United Rock owed Miller $65,000. This was the situation when Miller's president, Mr. Lovejoy, conferred with the

United Rock's board of directors, its president, secretary, and treasurer, relative to the deal with the appellees. The conference was had in Pittsburgh at a meeting of the board of directors. Lovejoy told them that a tentative arrangement had been entered into with the appellees conditioned upon Miller's obtaining a lease from United Rock. McWilliams, president of United Rock, testified that it was understood between all of them that, unless Miller could secure necessary financial aid from appellees, he could not execute the lease; that the lease with Miller would have no value unless the transaction could be financed; that the lease was executed to enable Miller to get money from the appellees. It is clear that the two transactions, the sale and lease by United Rock to Miller, and the contract between Miller and appellees, were substantially concurrent and mutually interdependent; that the arrangement was understood not only by the officers of United Rock, but by its board of directors at the Pittsburgh meeting; that as a result of the two transactions United Rock wiped out its indebtedness to Miller, secured a substantial amount in cash, and subsequently a large amount in royalties. Whatever may be the interpretation United Rock now puts upon the approval given the contract between Miller and appellees, and whatever may have been the extent of the authority of its president and secretary under its by-laws, it seems to us clear that what was done amounted to a waiver of its lien under the Kentucky statute; that the approval given to the contract by its executive officers was in furtherance of the arrangement known to and approved by its board of directors; and that in any event the acceptance of benefits under the contract now estops it from repudiating such approval as was given to it. The District Judge decreed the lien of the appellees to the stock pile to be superior to the lien of United Rock for rent. We think he was right.

■ The court also sustained priority of United Rock's lien upon Miller's machinery and equipment as against the subsequent mortgage thereon to the appellees. In this the court was also right. No serious contention is now made in respect thereto, and there was no cross-appeal.

■ A question arises as to the limitation put by the court upon the extent of United Rock's lien for rent. In its lease to Miller, United Rock reserved the option in the event of default in the payment of rent (a) to terminate and cancel the lease upon ten days' written notice, or (b), to take possession of and use all of the properties and equipment leased upon thirty days' written notice. United Rock exercised its (b) option. The court held it had no right to claim rents or royalties after the date of its notice; that exercise of the option automatically ended liability of the lessee for any further rents or royalties. United Rock claimed that its notice never became operative because an injunction thereafter prevented it from taking possession of the property, of Miller's equipment, machinery, and facilities, as provided for in the lease. This question arises not between the contesting lien claimants, but between United Rock and Miller's receiver on behalf of general creditors. United Rock made no application to the court for the modification or suspension of the injunction, nor did it avail itself of that provision of the decree which would have permitted it to use the machinery, equipment, and facilities of Miller upon the filing of a proper bond to insure their return in good condition at the expiration of the term of the lease. We think United Rock cannot now, under the circumstances, claim any lien as against general creditors to the extent of any rent that might have accrued after the exercise of its option. The court below was right.

■ The remaining question arises under the usury statute of Kentucky. The contract between Miller and the appellees provided for the payment of interest by Miller at the rate of 7 per cent. per annum on all moneys advanced to it, and provided further for a profit of 50 cents per ton on all rock asphalt in the stock pile, and to be subsequently produced, to be received by the appellees. The court properly construed the arrangement as a mortgage, though in terms a sale and resale. We approve that interpretation. The tests by which a mortgage is said to result from an agreement which is in terms a sale were sufficiently discussed by this court in Stark et al. v. Bauer Cooperage Co., 3 F. (2d) 214. The tests there approved but held inapplicable may be here relied upon. There can be no doubt that the transaction was a financing transaction, and not a sale. It was clearly a borrowing on the one hand and a lending on the other.

■■ The maximum legal rate of interest in Kentucky is 6 per cent. per annum. The court limited the appellees to recovery of the actual amount of interest which they themselves had paid for loans secured by them, yet notwithstanding it interpreted the contract as a mortgage, it allowed them the agreed profit of 50 cents per ton upon all of the asphalt

resold to Miller, and interest paid in excess of 6 per cent. We think it clear under the usury statute of Kentucky (Ky. St. § 2218 et seq.) that neither the bonus nor excess interest should have been allowed, the lenders having advanced their own funds obtained on their individual notes and being in no sense brokers. Commonwealth Farm Loan Co. v. Caudle, 203 Ky. 761, 263 S. W. 24. Whatever may be the rule in other jurisdictions as to the plea of usury being a personal plea, yet in Kentucky in a contest between parties asserting liens upon the same property owned by a common debtor, either party may make any defense which the common debtor could make. Banta v. Louisville Savings, Loan & Building Co., 59 S. W. 501, 22 Ky. Law Rep. 1045.

The decree below will be modified so as to exclude from the amount allowed to Mac-Millan and Hollingsworth so much as is attributable to the profit of 50 cents per ton, and interest in excess of 6 per cent., and the decree as modified is affirmed. The case is remanded for further proceedings consistent herewith.